Cynthia S. Wills
PO Box 7113
Carmel-By-The-Sea, CA 93921
Phone 831-233-0727
Plaintiff Pro Se

RECEIVED

2021 MAR 19  A 11: 30

SUSAN Y. SOONG
CLERK, US DISTRICT COURT
NO. DIST. OF CA.

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

### SAN JOSE DIVISION

Case No.  C 21 01998

| | |
|---|---|
| CYNTHIA S. WILLS, | ) COMPLAINT: VIOLATION EIGHTH and |
| | ) FOURTEENTH AMENDMENTS 42 U.S.C. |
| Plaintiff, | ) § 1983; TITLE 18 U.S.C. § 242; |
| | ) TITLE III ADA 42 U.S.C.; |
| v. | ) UNRUH CIVIL RIGHTS ACT § 51; |
| | ) THE REHABILITATION ACT 1973 §504 |
| CITY OF MONTEREY; MONTEREY | ) 29 U.S.C. § 701; NEGLIGENCE; |
| POLICE DEPARTMENT; HARBOR | ) INTENTIONAL INFLICTION OF |
| PATROL; and MONTAGE HEALTH, | ) EMOTIONAL DISTRESS; NEGLIGENT |
| | ) INFLICTION OF EMOTIONAL DISTRESS |
| Defendants, | ) COMPENSATORY and PUNITIVE/ |
| | ) EXEMPLARY DAMAGES |

**DEMAND FOR JURY TRIAL**

## 1. JURISDICTION

A.The Court has subject matter jurisdiction under 28 U.S.C.§1331

1343(a)(3)(4), and 1367. Plaintiff files this action under 42

U.S.C. § 1983 asserting violation of rights under the United

States Constitutions' Eighth and Fourteenth Amendments; Title 18

COMPLAINT-PAGE 1

U.S.C.§ 242; Title III ADA 42 U.S.C.; The UNRUH Civil Rights Act § 51; The Rehabilitation Act 1973 § 504; and 29 U.S.C. § 701. The Court has supplemental jurisdiction pursuant to 28 U.S.C. § 1367; whereas Plaintiffs' state law constitutional claims originate from the same incidents as her federal constitutional claims. In addition, Plaintiff asserts claims for Negligence, Intentional Infliction of Emotional Distress, Negligent Infliction of Emotional Distress, Compensatory and Punitive/Exemplary Damages.

VENUE

B. Venue is proper in this civil action as it complies with 28 U.S.C.§ 1391(b)and residency (c),(d)as the Defendants are located within the District of California and a substantial amount of the acts and/or omissions giving rise to the claims contained herein have occurred or will occur in the District.


INTRADISTRICT ASSIGNMENT

C. This civil action should be assigned to the San Jose Division of the United States District Court of the Northern District of California because a substantial part of the events and/or omissions which give rise to this civil action occurred or will occur in Monterey County.

COMPLAINT-PAGE 2

2.PARTIES

A. Plaintiff, CYNTHIA S. WILLS, an individual, is and, at all times relevant hereto, was a resident of Monterey County, California. Plaintiff was at all times relevant hereto, a resident of the City of Monterey.

B. Defendant CITY OF MONTEREY (hereinafter "City") is a municipal corporation, which is organized under the laws of the State of California, with the capacity to sue and be sued. The City is the political governmental entity, legally responsible for the actions of the Monterey Police Department and Harbor Patrol, its employees, officials and agents. The City is sued in its own right and on the basis of the acts or omissions of its employees, officials and agents.

C. Defendant MONTEREY POLICE DEPARTMENT (hereinafter "Monterey PD") is the municipal agency legally responsible for the enforcement of the Monterey Municipal/City Code, Ordinance 3281 § 20-85 defined in Article 1 Definitions § 23-2 and for policing the City. The Monterey Police Department is sued in its own right and on the basis of the acts and omissions of its employees, officials and employees.

D. Defendant Monterey HARBOR PATROL (hereinafter "Monterey HP") is the municipal agency responsible for policing the harbor and

COMPLAINT-PAGE 3

marina and for enforcement of Monterey Municipal/City Code Ord. 3548 § 2, Article 1 and 3 § 17-1 through 17-17. Monterey HP shall have the full authority in the interpretation and enforcement of all rules and regulations affecting the harbor/marina and the issue of citations for the violations of any of the provisions of the code. The Monterey HP is sued in its own right and on the basis of the acts or omissions of its employees, officials and agents.

E. Defendant MONTAGE HEALTH is a domestic nonprofit, general cooperative corporation with the corporate name of Montage Health with California Corporate Number C1099282 and a principal address of 23625 Holman Highway, Monterey, California. On December 04, 2006 a Certificate of Amendment of the Articles of Incorporation for the Community Hospital Foundation was filed with the Secretary of State. On February 05, 2016 a Certificate of Amendment of the Articles of Incorporation for the Community Hospital Foundation was filed with the Secretary of State, changing the name to MONTAGE HEALTH. On December 29, 2016 a "Merger Agreement" was filed with the Secretary of State by and between MONTAGE HEALTH and Community Hospital Endowments; an Execution Version was filed on the same date between MONTAGE HEALTH and Community Hospital Properties. On March 08, 2018 a

COMPLAINT-PAGE 4

Statement of Information was filed with the Secretary of State for MONTAGE HEALTH with California Corporate Number C1099282. The most recent filing for Defendant MONTAGE HEALTH is December 27, 2019, California Corporate Number C1099282 filed with the Secretary of State with a principal address of 23625 Holman Highway, Monterey California. Defendant MONTAGE HEALTH is a corporation with the capacity to sue and be sued. The Defendant MONTAGE HEALTH is sued in its own right and on the basis of the acts or omissions of its employees, officials and agents.

### 3. PRELIMINARY STATEMENT

In 2015 the United States Department of Justice filed a STATEMENT OF INTEREST in the case of Bell v. City of Boise. The Department of Justice stated: "In recent years, some people who were affected by the economic downturn and foreclosure crisis have become homeless."[1] "…the United States files this Statement of Interest to make clear that the *Jones* framework is the appropriate legal framework for analyzing Plaintiffs' Eighth Amendment claims."[2] "Pursuant to the Violent Crime Control and Law Enforcement Act of 1994, 42 U.S.C.§ 14141 ("Section 14141"), the United States enforces the rights of individuals to be free

---

[1] STATEMENT OF INTEREST OF THE UNITED STATES (D. Idaho), August 06, 2015, pg.2.

[2] STATEMENT OF INTEREST OF THE UNITED STATES (D. Idaho), August 06, 2015, pg.4.

COMPLAINT-PAGE 5

from unconstitutional and abusive policing."[3] "Communities nationwide are suffering from a shortage of affordable housing."[1] "If the Court finds that it is impossible for homeless individuals to secure shelter.....then the Court should also find that enforcement of the ordinances under those circumstances criminalizes the status of being homeless and violates the Eighth Amendment to the Constitution."[2]

In the 2019 Executive Summary of the Monterey County Homeless Census & Survey it was recorded: a "census population of 2,422, with greater than 72% being over the age of 25, 35% female, 93% sexual orientation straight, 50% white, 18% justice system involvement,78% residence prior to homelessness, 76% unsheltered, 86% of the chronically homeless unsheltered, accommodation on census count night 7% motel/hotel, 19% vehicle, 22% outdoors, 18% tent."[3a] "55% first episode of homelessness."[3b] "..inability to afford rent 76%."[3c] The 2019 Monterey County Homeless Count and Survey was performed using HUD-recommended practices for counting and surveying the homeless population. The Applied Survey Research (ASR) is a social research firm dedicated to helping people build better communities.

---

[3] [1] [2]  STATEMENT OF INTEREST OF THE UNITED STATES (D. Idaho), August 06, 2015, pg. 4, 14, 16.
[3a] [3b] [3c] MONTEREY COUNTY HOMELESS CENSUS & SURVEY 2019 EXECUTIVE SUMMARY, 01/31/19, pg.7, 8, 48.

COMPLAINT-PAGE 6

Defendants' City of Monterey, Monterey PD and Monterey HP have violated Plaintiffs' absolute right to travel in violation of the Fourteenth Amendment of the U.S. Constitutions' Equal Protection Clause (including vagueness and overbreadth) and California State Law. Section 1983 of Title 42 of the U.S. Code authorizes parties to enforce federal constitutional rights against municipalities and local governments. Section 242 of Title 18 makes it unlawful for a person acting under color of any law to willfully deprive a person of rights under the Constitution and includes local officials within their lawful authority, but also acts done beyond the bounds of that official's lawful authority.

Under Title III 42 U.S.C. ADA 12181(7)(F) a hospital is a private entity considered a public accommodation. Section 12182 prohibits discrimination on the basis of disability in the full and equal enjoyment of services, facilities, privilege, accommodations. Section 12188 provides availability of remedies to any person who is being subjected to discrimination and under authority of court in a civil action under (1)(B) the court may grant equitable relief that such court considers appropriate and may award monetary damages (i) not exceeding $50,000 for a first

COMPLAINT-PAGE 7

violation. The findings; purpose; policy of 29 U.S.C. 701 are that millions of Americans have one or more disabilities and the numbers are increasing. Under section (5) individuals continually encounter various forms of discrimination in public accommodations such as health services (1) and lack of respect for individual dignity. The UNRUH Civil Rights Act, California Civil Code § 51 provides protection from discrimination by all public establishments in accommodations because of disability among others. Section 504 of the 1973 Rehabilitation Act is the first civil rights law to be enacted in the U.S. addressing disability and it prohibits discrimination against individuals with disabilities in programs that receive federal financial assistance. This Act ultimately set the stage for the Americans with Disabilities Act which final version of the bill was signed into law on July 26, 1990 by President George H.W. Bush with amendments in 2008 effective as of January 01, 2009.

A significant development in the field of civil rights litigation has been the emergence of monetary damages as remedy for the enforcement of constitutional rights allowing Plaintiffs to recover damages for a wide range of violations. Compensatory damages are proper for Defendants' constitutional violations.

COMPLAINT-PAGE 8

Punitive damages are additionally awarded and the amount of the award is dependent upon the Defendants' financial circumstances and serve mainly to deter, vindicate, penalize and provide incentives to ensure Defendants' compliance with the law.

### 4. BACKGROUND

In 2019 Plaintiff was detrimentally impacted by the nationwide shortage of affordable housing referred to as the economic downturn and foreclosure crisis by the United States Department of Justice in *Bell v. Boise (D. Idaho) 08/06/15*. Plaintiff attempted relocation to "two" different states neighboring California but returned when it was clear those states were equally dependent economically upon the tourist industry. Plaintiff reluctantly concluded that traditional housing was in a state of extreme shortages and therefore relied entirely upon the tourist industries supply of hotels, inns, bed and breakfast, VRBO's, air BNB's and motels to remain housed at least temporarily. Unfortunately "and" fortunately Plaintiff became stranded in her car when these "tourist priced accommodations" sold out and even though Plaintiff traveled up to an hour outside the area, these accommodations were sold out as well. Plaintiff once again reluctantly, concluded that "spending the night in her car was strategically sound in comparison to spending a hundred dollars

COMPLAINT-PAGE 9

each night on hotel accommodations." Plaintiff attempted several additional strategies to resolve her lack of housing. Including, traveling several hundred miles for "off season extended stay" hotel rates, starting her own business, and extensive room share searches. Ultimately, Plaintiff was physically and mentally exhausted, out of ideas, money, in shock and without shelter of any kind. Plaintiff had spent many nights in her car in Seaside, California without issue and now found herself directly adjacent to the Seaside Police Department without shelter in a brightly lit area and simply stayed awake the first few nights. The Seaside Police Department never "once" harassed me in any way, seemed very empathetic to my situation and always had stellar intentions and treated me with the utmost respect, "every single time I encountered them, without exception." Ultimately, Plaintiff encountered several individuals whom had been homeless for approximately thirty years. These individuals were substance abusers of alcohol, crack, methamphetamines and heroin. One of these individuals whom had recently broken up with his girlfriend got the wrong idea when I gave he and his friend sleeping bags, pillows and detox advice. Once Plaintiff rejected his advances he became "verbally and physically threatening" and shortly thereafter this man's friend threatened to set fire to

COMPLAINT-PAGE 10

the Plaintiff and her belongings. Plaintiff spoke with Seaside Police and decided to leave Seaside and return to Monterey where Plaintiff had stayed for "months in at least twelve different" hotels.    Almost immediately, Plaintiff realized that the man whom had threatened and stalked her, whose friend threatened to set her and her belongings on fire found and began stalking her in Monterey.    Plaintiff had not had any interactions with Monterey Police at this point and time and once reported that this man had been stalking her Monterey PD strenuously advised Plaintiff to get a restraining order.    Ultimately, Plaintiff filed for the restraining order and a "Civil Harassment (with violence) Restraining Order" was granted for two years beginning 04/30/19.

### 5. (a) STATEMENT OF FACTS

Plaintiff contends that the factual allegations stated herein "do not" represent each and every event, claim and violation of law that Plaintiff asserts or will assert against Defendants City of Monterey, Monterey Police Department and Monterey Harbor Patrol; these are the grotesque events that prompted the Plaintiff to file this civil action claiming violation of laws.

A. On or about spring of 2019 (approx. March) Plaintiff set up a tent after dark in a park in Monterey near Del Monte beach where

COMPLAINT-PAGE 11

it was clear that other individuals were sheltering at night. Plaintiff was asleep when suddenly a Monterey PD patrol car shined lights on the tent and Plaintiff could hear the officers laughing as they approached the tent. Plaintiff was instructed not to set up the tent again in the area.

B.In the spring of 2019 Plaintiff (with no other place to go) set up a tent on Del Monte Beach in Monterey. Plaintiff was startled by a flashlight and two individuals outside her tent whom identified themselves as Monterey PD and demanded she unzip the entrance to the tent so they could speak with her. Plaintiff complied with the request immediately once she unlocked a lock on the zipper of the tent entrance. These MPD officers told the Plaintiff to pack up the tent and vacate the area immediately or they would arrest her. Plaintiff began to cry and told the officers that she had no other place to go and that a homeless man had been threatening and stalking her and that it was after midnight and she was extremely tired and afraid. The officers told her to comply immediately or she would be arrested and asked for her license. Plaintiff gave the officers her license number which one officer verified and then asked Plaintiff if her hair was brown or blonde. Plaintiff asked for the officers' names and they replied **Officers Brian Nino and Scott Collier.**

COMPLAINT-PAGE 12

**Officer Brian Nino** then handed Plaintiff an eviction notice while **Officer Scott Collier** looked on. The following morning Plaintiff hand delivered to the Monterey PD a letter addressed to the Chief of Police about **Officers' Brian Nino** and **Scott Colliers'** actions and the eviction notice.

C. In the spring of 2019 Monterey PD had received Plaintiffs' Civil Harassment (with violence) Restraining Order which they were attempting to serve upon the homeless man that had been stalking me. Ultimately, **Officer Jesse Phillips** served the Restraining Order upon the party and then told Plaintiff to leave the area when the Court Order specifically instructed that the Defendant in that Order stay a specific distance from Plaintiff and if saw the Plaintiff was to leave the area by the specified distance. Plaintiff followed **Officer Jesse Phillips** demand to leave the area.

D. In the spring of 2019 Plaintiff could not get the Monterey PD to enforce the Restraining Order filed against the Seaside homeless man whom had threatened and stalked her. Every single time the homeless man violated the Court Order Monterey PD refused to enforce the Order and arrest him. Plaintiff had many conversations with officers and filed many written complaints with Monterey Chief of Police but there was "no" enforcement.

COMPLAINT-PAGE 13

E. In spring of 2019 Plaintiff was setting up her tent on Del Monte Beach when a Monterey PD patrol car approached her. The Officer stated that he was a superior with MPD and he was specifically instructing her **"do not put up that tent"** and further stated **"if I come back and find that tent up I am going to give you a citation for illegal camping"**. As the Officer drove off Plaintiffs' tent was struck by wind breaking the tent pole and the fully erected tent was blown 50 feet before Plaintiff recovered it. Ultimately, Plaintiff vacated this area and moved to a pitch dark area near the Coast Guard in Monterey. As always Plaintiff took down the tent every morning leaving nothing behind.

F. One night at the Coast Guard after midnight Plaintiff awoke to find two males outside her tent attempting to set her tent on fire with a lighter and a can of some type of fuel spray. Plaintiff then heard a voice in the distance yelling "I told you not to go to those feeds." (*A week ago Plaintiff was approached by a man rumored to sell heroin to the homeless and he stated to Plaintiff; on behalf of the man whom was served with the Restraining Order; that she was not to interfere with this mans' ability to attend food gatherings for the homeless in the area even if he violated the Courts' Restraining Order.*)

COMPLAINT-PAGE 14

Plaintiff talked with Officer DiMaggio telling him that the two men had run off but that she was confident who was behind the incident. In the morning a kind, gentle man whom Plaintiff knew told her he had gotten up in the middle of the night and had seen two males trying to set her tent on fire with a lighter and a can of something they were spraying. Plaintiff relayed this to MPD but nothing was done. That day Plaintiff made the decision to throw the tent away. Plaintiff had been harassed by MPD. The City of Monterey beachcombers had driven by her tent many mornings with huge vehicles trying to deter campers on the beach.

G.   Plaintiff continued to report the Restraining Order violations. Ultimately, Plaintiff encountered Officer Welch about a restraining order violation and Plaintiff begged Welch to arrest him recounting the attempt to burn Plaintiffs tent while she was sleeping. A short while later Welch informed Plaintiff that he had arrested the man. From that point forward the man ceased to violate the Restraining Order.

H. Plaintiff began to stay near the Monterey Wharf without the tent, specifically the Custom House. One night **Officer Scott Collier** approached Plaintiff and told her if she didn't vacate she would be given a citation for illegal camping. With no tent and no place to go Plaintiff packed up and vacated the area.

COMPLAINT-PAGE 15

I. In the months following the spring of 2019 Officer Welch's Restraining Order arrest had halted the stalking and harassment by the Seaside homeless man. Plaintiff now realized this individuals friends who drank and did drugs with him were harassing the Plaintiff on his behalf. The stalking, threatening and harassing mostly occurred at night when Plaintiff was sleeping. One night Plaintiff was asleep at the Custom House on a bench and awoke to find a man she had never encountered standing over her head. Plaintiff screamed and contacted Monterey Harbor Patrol. Harbor Patrol stated that he heard Plaintiffs scream but Harbor Patrol refused to do anything.

J. Plaintiff moved to a different area nearby. On one night an extremely intoxicated man approached her while she was sleeping, Plaintiff screamed and then stood up and told him to leave her alone. A short while later he returned again. Plaintiff contacted MPD and they refused to do anything and instead told Plaintiff she was illegally camping and could get a citation.

K. In 2019 Plaintiff was talking with a very nice man that was living in a tent with his wife and three dogs and he told Plaintiff that one of his dogs was stolen the other day. Ultimately, Plaintiff recovered this dog outside a liquor store and Monterey PD arrested the homeless man for stealing the dog.

COMPLAINT-PAGE 16

Officer Delgado told Plaintiff if this man contacted or coerced her she should contact the PD. After this man got out of jail, Plaintiff was sleeping one night and found this man standing near her as she slept. Over the next hour he returned and another man returned approaching Plaintiff as she slept. Plaintiff told both individuals to leave her alone. Plaintiff reported it to MPD but nothing was done and Plaintiff was threatened with a citation for camping illegally.

L. Plaintiff was sleeping in the same general area on another night and Plaintiff awoke to find a different male moving closer and closer to the area she was sleeping. Plaintiff contacted the MPD. **Officers' Brian Nino** and **Scott Collier** arrived and refused to do anything about it and stated Plaintiff was illegally camping and she could receive a citation. **Officers' Brian Nino** and **Scott Collier** kept threatening Plaintiff with a citation. Plaintiff requested to speak with their supervisor, whom showed up and reiterated that Plaintiff was illegally camping and could be given a citation.

M. Plaintiff encountered the same male the next day whom threatened her physically and screamed at her. Plaintiff contacted MPD, Officer Delgado and Officer Pinkas arrested him and Plaintiff never had another problem with the man again, ever.

COMPLAINT-PAGE 17

N. On another night Plaintiff was preparing to sleep on Cannery Row. A Monterey PD patrol car drove by her and **Officer Brian Nino** and **Officer Kris Richardson** approached Plaintiff on foot. Plaintiff was told that she was illegally camping and to vacate the area or she would be given a citation and/or arrested. During this encounter **Officer Brian Nino** asked Plaintiff what had happened with the man whom I had a Restraining Order against. Plaintiff was puzzled about **Officer Brian Nino's** interest in this but answered "he violated a Court Order and was arrested because of that fact." In Plaintiffs last encounter with **Officer Brian Nino** she made it clear that she would not be speaking to **Officer Brian Nino** and **Officer Scott Collier** again stating she felt "both Officers had bad intentions towards her" because of her numerous complaints to the Monterey Police Department Chief.

P. Plaintiff feeling hopeless most of the time still managed to shower each day, did laundry weekly and one day walked eight miles. Plaintiff did not drink or do drugs. One day Plaintiff met the Director of Operations of an Art Expo nearby and told this young woman that she needed a job and told her about the two attempts to set her tent afire as she slept. This woman told her "I'm going to do everything I can to help you." Very soon thereafter this individual kept her promise and gave her a key.

COMPLAINT-PAGE 18

The plan was to keep Plaintiff and her 15 year old dog safe at night and to help Plaintiff by giving her a job as the gallery was doing some improvements to the grounds and spray painting furniture. One night Plaintiff was interrupted by a very aggressive Monterey Harbor Patrol Security worker named **Alexander Callison** who demanded to know what Plaintiff was doing at the Art gallery (*Plaintiff had initially asked the Director of Operations of the gallery about this concern and she replied that the gallery was privately leased and apologies would follow if anyone questioned the Plaintiff and to call her immediately if Plaintiff had any problems.*) So, Plaintiff did as instructed and told **Alexander Callison** that she was at the gallery with the knowledge of the Director of Operations and had been given a key and if he had any questions to call her cell number and Plaintiff proceeded to give **Callison** the phone number and closed the gate. **Callison** then told Plaintiff that he was calling the Monterey Police Department. **Callison** told the Plaintiff that the Director of Operations did not answer her cell phone. Plaintiff did not believe **Callison** and so Plaintiff went behind a closed door and called and she answered immediately. I told her about the situation and asked her to come down as soon as possible and she told Plaintiff she was on her way and would be there shortly.

COMPLAINT-PAGE 19

Very soon Monterey Police Department showed up. All the Officers that arrived were officers the Plaintiff had complained to the Monterey Police Department Chief Hober about; **Officer Jesse Phillips, Officer Kris Richardson, Officer Scott Collier.** Each Officer was **extremely aggressive**, except **Officer Scott Collier** who stood in plain clothes a few feet away grinning. *At all times during the entire encounter Plaintiff remained extremely calm and quietly stated that the Director of the gallery was on her way and Plaintiff had permission to be there.* **Officer Kris Richardson** immediately got two inches from Plaintiffs face and started yelling at the top of his lungs and spitting in her face saying "DO YOU WANT ME TO THROW YOUR DOG IN THE POUND, DO YOU WANT ME TO ARREST YOU" hollering and spitting inches away from Plaintiffs' face repeating himself over and over. *Plaintiff stood still and said nothing, Plaintiffs 15 year old dog was in the bathroom (and Plaintiff did not know this at the time but the dog had heart failure).* Shortly thereafter, I heard the Director of the galleries voice, **Officer Kris Richardson** went out to her and I could hear him **threatening her with arrest and talking very loudly and aggressively towards her and would not let her into the gallery.** At that time I asked **Officer Jesse Phillips** "what Scott Collier was doing here in plain clothes".

COMPLAINT-PAGE 20

1  Officer Jesse Phillips replied "he's just along for the ride."

2  During Officer Kris Richardsons' absence I took out my cell

3  phone and left a message for Officer Jake Pinkas about the

4  current events and while I left the message Officer Jesse

5  

6  Phillips looked at the ground as though he was embarrassed. Then

7  Kris Richardson returned leaving the Director outside the gate.

8  Officer Kris Richardson started yelling again and stated "GET

9  OUT NOW AND DON'T COME BACK OR I'LL ARREST YOU". Plaintiff left

10  immediately and went to speak with the Director of Operations,

11  
12  we sat in her car, both of us visibly shaken and I handed her

13  the key she had given me. That night Plaintiff couldn't sleep.

14  In the days to follow the Plaintiff made several calls about the

15  events at the gallery. Plaintiff spoke with an individual who

16  answered questions about the galleries lease and she stated "*I*

17  
*hope those Officers don't get away with what they did and she*

18  
19  *stated I hope they don't cover up for them*". The Plaintiff

20  eventually contacted the Attorney for the City of Monterey.

21  Plaintiff told her she would be filing a Civil Action against

22  the City of Monterey, the Police Department and Harbor Patrol.

23  Plaintiff warned that any further harassment and intimidation

24  would be carefully noted and that it would be remedied in her

25  
26  civil action and advised her to address Plaintiffs concerns now.

27  COMPLAINT-PAGE 21

28

1  Q. Plaintiff was sitting at the Custom House one afternoon when
2  she saw and heard a confrontation between two individuals one of
3  whom yelled "I'm not a registered sex offender I was framed."
4
   Eventually the fight was over and the parties left the area and
5
6  Plaintiff went out and sat down on the rock wall. Later the same
7  individual returned and sat down and then approached me and
8  stated "you probably don't know this but you're not allowed to
9  sit down next to a musician". Plaintiff completely ignored him
10
   which angered him more. Eventually, Plaintiff left this persons
11
   "claimed area" closer to the Wharf about fifteen feet in front
12
13 of him which really made him mad because Plaintiff was
14 interfering with his panhandling. Plaintiff did not engage and
15 continued doing what she was doing. He then came up behind her
16
   one night and stated "I had a dream that someone threw gasoline
17
   on you while you were sleeping". Plaintiff reported it to MPD
18
19 and they made contact with him. The "seventeen" aforementioned
20 incidents were not the only incidents of harassment by various
21 individuals of the homeless community and/or the only incidents
22 of harassment by Monterey Police Department and Monterey Harbor
23
   Patrol or the only violations of Plaintiffs rights. There are
24
   too many incidents to state in this document. These incidents
25
26 are listed to show a pattern.
27 COMPLAINT-PAGE 22
28

5.(b) STATEMENT OF FACTS

A.   In  March  of  2019  Plaintiff  was  suffering  from  sleep deprivation having had inadequate sleep in duration and quality and it was detrimentally affecting her health both physically and mentally. Plaintiff asserts that a health care facility such as a hospital should be well aware and informed of the effects of sleep deprivation; that a mere 35 hours of sleep deprivation in healthy individuals can negatively impact the brains ability to put events into proper perspective. Plaintiff needed sleep desperately and sought a physicians' assistance on an expedited basis  and  therefore  went  to  the  Community  Hospital  of  the Monterey Peninsula (CHOMP) because she had sought treatment for asthma when it was an emergency related situation. Plaintiff had never been prescribed medication to help her sleep and felt the physician would prescribe it to help get immediate rest. Every time Plaintiff went to CHOMP she was accompanied by her "service animal",  Plaintiff  was  "never"  confronted  before  about  her "service animal" at CHOMP. When Plaintiff arrived she was asked a series of questions about what brought her to the emergency department. Plaintiffs' exhaustion delayed her response so the nurse began answering her own questions she had posed to the Plaintiff. The intake process moved very quickly and Plaintiff

COMPLAINT-PAGE 23

had not slept well in months so her responses were delayed and Plaintiff had not realized at that point that the entire processing of her visit to the emergency department was now being based upon those initial questions that the intake nurse had answered for the Plaintiff. Plaintiff later realized that she was "extremely' susceptible to suggestion at that time and the whole purpose of her visit to CHOMP was now critically misguided. Plaintiff began to realize that her slow responses and fatigue and physical exhaustion were now being assessed from a mental health perspective and Plaintiff could not resolve it. To make matters worse Plaintiff did not want to do blood work but Plaintiff did the urine test hoping it would resolve any concerns about drug and alcohol use. Plaintiff asserts that Defendant MONTAGE HEALTH employees made assumptions about the Plaintiffs' medical condition and reasons for seeking medical care at their hospital based upon her status as an unsheltered individual. Plaintiff to the best of her knowledge understands that **JUDY D. BLEVINS, RN; DR. ERIN MARY SULLIVAN, MD** and **DR. LESLIE D. MCDANIEL, MD** were health care providers for Plaintiff in March 2019 and were employed at CHOMP. Defendant MONTAGE HEALTH refused to provide names of other employees involved in Plaintiffs care and **"will be obtained in the discovery proces**s."

COMPLAINT-PAGE 24

B.In March 2019 **DR. ERIN MARY SULLIVAN, MD** asked Plaintiff "**for written documentation that her dog was a service animal**." The Plaintiff replied "*you do not have the right to ask for written documentation it is a violation of Federal Law.*" Immediately Dr. Sullivan stated "**she was going to speak with an administrative supervisor**" and left the room.

C. Next the Plaintiff was told she would be moving to a different room. Plaintiff complied with the request. The room was directly next to the nurse's station. Once in the room a **Security Officer sitting on a chair next to the room and the station indicated that they were going to be taking my dog away from me and inquired if the dog was aggressive or would bite. This Officer smiled during his statements and put on gloves.**

D. Immediately Plaintiff stated that she wanted to call the Monterey Police Department and file a complaint. At that point in time the Plaintiff had not had any negative interactions with Monterey PD and was comforted in the fact that they would resolve the situation.

E. Monterey PD arrived with three officers all of whom came into Plaintiffs room. Plaintiff explained what was going on and the Officers told Plaintiff that the hospital "**did not believe the Plaintiff that the dog was a "service animal" and that Plaintiff**

COMPLAINT-PAGE 25

should provide **written proof and give it to MPD and they would give it to the hospital staff**." Plaintiff was in complete shock and panic and gave the document to MPD whom took it out of the room and gave it to hospital staff and returned to Plaintiff.

F. Then to Plaintiffs horror MPD stated **that the dog would have to be taken away from her while a doctor evaluated the Plaintiff**. Plaintiff reluctantly complied but demanded that one of the Monterey PD Officers specifically hold the animal close by the room and the Officer agreed. Immediately, **_Plaintiffs service animal became distressed._** The dog was old and Plaintiff then realized that she had to comply with and do and say everything that needed to be said to return the Plaintiffs' **_"service animal to her as quickly as possible."_**

G. Eventually **DR. LESLIE D. MCDANIEL, MD** arrived in Plaintiffs room. Plaintiff immediately stated to **DR. LESLIE D. MCDANIEL, MD**, **_"if you don't return my "service animal" immediately I will take legal action against the hospital for violating my rights."_** The Plaintiff was then **_required to answer DR. MCDANIELS questions_**. Plaintiff reiterated over and over again that she demanded her **_"service animal"_** be returned to her **_immediately._** **_Plaintiff answered the doctors questions because they would not return the dog and would only release Plaintiff if she got a hotel._**

COMPLAINT-PAGE 26

## 6. CLAIMS

A. Monterey Municipal Code Ordinance 3281 § 20-85 (06/2000) criminally punishes the occupation of any camper, trailer or other vehicle equipped for human habitation, the erection of any tent or other shelter, the arrangement of sleeping bags or bedding for the purpose of, or which will permit, remaining overnight the hours between 10:00 p.m. of one day and 6:00 a.m. of the following day. Section 23-3 states it shall be unlawful for any person to camp except in designated areas, enter or remain on the premises after established closing hours. It shall be unlawful for any person to enter or remain on the premises of any City park outside of posted open hours. The City has changed the language of the ordinances in the past. The terms of this ordinance is broad such that it covers sleeping or resting in any public place and police officers have cited individuals for violation throughout the City. In Monterey many people experience homelessness on any given night. There are no non-faith based shelters in the **City of Monterey** for adult homeless individuals. Safe Passage is a co-ed transitional housing program for homeless youth ages 18-21 and I-HELP Interfaith Homeless Emergency Lodging Program is based on 60 *"Monterey County" area churches and other faith based organizations*.

COMPLAINT-PAGE 27

B. Many of those emergency shelter beds, moreover, are not available for persons with certain disabilities and some shelters are also overtly religious. Those individuals who are not able to find shelter have no choice but to sleep in the public places of the City of Monterey in violation of laws that prohibit "camping" or sleeping in public places. Monterey police officers routinely issue camping citations to persons experiencing homelessness for sleeping, sitting, or talking with friends in public places—activities homeless persons should have the freedom to engage in without fear of police interference. Monterey police officers also issue disorderly conduct citations to persons experiencing homelessness merely for sleeping in discrete public places. These citations lead to convictions and jail time, which make it more difficult for Monterey's homeless population to obtain and keep employment and long-term housing. Thus, they continue to sleep in public places despite the constant fear of being issued a citation or arrested by police. The Defendants have used the Ordinances to cite and arrest individuals who cannot avoid violating these laws because they are homeless and no shelter is available to them and therefore are criminalized violating the protections of the Eight Amendment of the United States Constitution.

COMPLAINT-PAGE 28

C. Plaintiff brings this action for monetary damages pursuant to 42 U.S.C. § 1983 and 28 U.S.C. § 2201, 2202. Defendants under color of law have violated Plaintiffs' rights under the Eighth Amendment of the U.S.C. as applied to the States through the Fourteenth Amendment. The Eighth Amendment precludes the enforcement of a law prohibiting sleeping outside against homeless individuals with no access to alternative shelter.

D. There are substantially more individuals experiencing homelessness in Monterey than there are available beds. Defendants continue to enforce criminal laws against homeless individuals for sleeping outside. Federal law defines a "homeless individual" to include one who lacks a fixed , regular and adequate night time residence or a place not ordinarily used for sleeping such as streets, automobiles, parks and other public spaces. Defendants action pose a health risk to homeless individuals because it has a detrimental effect on the ability to sleep which is a physical and mental necessity for people to properly function creating disruptions in cognitive function and exacerbates a number of health problems. Those who are eligible for housing have to wait long periods of time. The City of Monterey through its Police Department maintains a policy of enforcing anti-camping ordinances in violation of their rights.

COMPLAINT-PAGE 29

E. Plaintiff received an eviction notice, threats of citations and Monterey Police Officers had knowledge that Plaintiff was experiencing homelessness and had no lawful place to sleep or rest within the City of Monterey because there were no shelters in the City of Monterey and used eviction notices, citations and/or the threats of citations to threaten Plaintiff in an effort to drive her and other individuals out of the City of Monterey. Plaintiff often roamed constantly trying to choose the safest place to sleep, without being harassed, in addition, by the Police Department, which conduct was directed and condoned by the City of Monterey and the Police Department. City policymakers and other relevant individuals in positions of authority were aware of this practice and knowingly permitted these actions by Monterey Police Officers. Defendants' policies and practices caused Plaintiff to suffer humiliation, psychologically, physically and emotionally, degradation, pain, injury, financial loss and the loss of privacy and basic constitutional and human rights.

### 7. FIRST CLAIM FOR RELIEF

Violation of the Eighth Amendment to the United States Constitution

A. Plaintiff hereby incorporates all preceding paragraphs as if

COMPLAINT-PAGE 30

set forth fully herein.     The Eighth Amendment of the U.S. Constitution prohibits cruel and unusual punishment.

B. The "Cruel and Unusual Punishments" Clause of the Eighth Amendment "imposes substantive limits on what can be made criminal and punished as such." *Ingraham v. Wright 430 US 651, 667-68 (1977).*

C. Laws criminalizing an individual's status, rather than specific conduct are therefore unconstitutional. *Robinson v. California, 370 U.S. 660 (1962).*

D. The Cruel and Unusual Punishments Clause prohibits the "enforcement of a statute prohibiting sleeping outside against homeless individuals with no access to alternative shelter." *Martin v. City of Boise, 920 F3d 584, 615 (9th Cir. 2019).*

E. Lack of adequate shelter space and affordable housing forces individuals experiencing homelessness to sleep in public spaces in the City of Monterey. There are substantially more individuals experiencing homelessness than there are shelter beds. Plaintiff had no way to comply with the cities ordinances yet Defendants still cited, threatened and harassed the Plaintiff for sleeping in public despite there were no shelters at all in the City of Monterey. Plaintiffs only option was to stay in a pervasively religious atmosphere to which she objected.

COMPLAINT-PAGE 31

E. Defendants punished Plaintiff based upon her homeless status. Plaintiff was given an eviction notice and harassed for sleeping in public and Defendants actions penalized Plaintiff despite her rights under the Eighth Amendment of the U.S. Constitution as incorporated and applied to the states through the Fourteenth Amendment.

## 8. SECOND CLAIM FOR RELIEF

### Violation of Equal Protection and the Fundamental Right to Travel Fourteenth Amendment

A. Plaintiff hereby incorporates all preceding paragraphs as set forth fully herein. Defendants customs and policies for citing, harassing and threatening or arresting homeless individuals under Monterey Municipal Code 3281 § 20-85 made it impossible for Plaintiff to reside and/or travel in Monterey.

B. Plaintiff and others experiencing homelessness can't live in the City of Monterey without violating the city's anti-camping ordinances because Plaintiff had a physical and mental need to sleep  and Plaintiff had no other alternative. The enforcement of such ordinances has the effect and purpose of driving them out of the city or to deter them from entering to begin with and unlawfully interfered with the fundamental right of Plaintiff to travel inter/intra-state violating the Equal Protection Clause.

COMPLAINT-PAGE 32

The Monterey Municipal Code 3281 § 20-85  fails to provide direction to prevent the likelihood of discriminatory and arbitrary enforcement and is therefore; unconstitutionally vague in violation of the Fourteenth Amendment to the U.S. Constitution and Plaintiff seeks remedy to the violation of her rights.

### 9. THIRD CLAIM FOR RELIEF

Violation of Due Process-Overbreadth Fourteenth Amendment

A. Plaintiff hereby incorporates all preceding paragraphs as if set forth fully herein. Under the Eighth and Fourteenth Amendments to the U.S. Constitution penalizing harmless and involuntary conduct of Plaintiff for resting or sleeping in public spaces in the City of Monterey when she did not have a lawful or alternative place to shelter interferes with Plaintiffs constitutional rights as such, to be free from cruel and unusual punishment and the ability to travel inter/intra-state and are unconstitutionally overbroad.

### 10. FOURTH CLAIM FOR RELIEF

18 U.S.C. § 242 - Deprivation of Rights Under Color of Law

A. Plaintiff hereby incorporates all preceding paragraphs as if set forth fully herein. The U.S. Supreme Court has interpreted the U.S. Constitution to construct laws regulating the actions

COMPLAINT-PAGE 33

of one or more persons acting under color of law willfully to deprive or conspire to deprive another person of any right protected by the Constitution or laws of the United States. Deprivation of Rights Under Color of Law is a federal criminal offense which occurs when any person under color of law, statute, ordinance, regulation or custom willfully subjects any person to the deprivation of any rights, privileges or immunities secured or protected by the Constitution of the United States. Although, there is *no private right of action under the statute*, this statute includes off duty conduct if the official status is asserted in some manner and in addition to law enforcement includes officials such as mayors, council persons and security guards.

## 11. CLAIMS

A. The Americans with Disabilities Act of 1990 42 U.S.C. § 12101 is a civil rights law that prohibits discrimination based on disability and affords similar protections under the Civil Rights Act of 1964. The final version of the bill was signed into law on July 26, 1990 by President George H.W. Bush and later amended in 2008 with changes effective as of January 1, 2009. Plaintiff files this action against Defendant **MONTAGE HEALTH** in violation of the ADA Act and pendent state law claims.

COMPLAINT-PAGE 34

B. Plaintiff has standing to pursue this case because Plaintiff is disabled pursuant to 42 U.S.C. 12102 suffering an impairment substantially limiting major life activities under 12102(2)(A) and uses a service animal who helps with daily life activities. Defendant MONTAGE HEALTH is a place of public accommodation pursuant to statutory and regulatory definitions under 42 USC 12181(7). Plaintiff has suffered concrete and particularized injury.

## 12. FIRST CLAIM FOR RELIEF

Violation of the Americans With Disabilities Act Title III 28

C.F.R. § 36.302 (Service Animals)

A. At all times Plaintiffs "service animal" was under Plaintiffs control as required by law. Plaintiffs "service animal" was threatened to be taken away and Plaintiff complied to decrease the stress placed upon both the Plaintiff and Plaintiffs "service animal".

B. In March 2019 Dr. Erin Mary Sullivan,MD asked Plaintiff "for written documentation that her dog was a service animal". Defendant MONTAGE HEALTH actions violated Title III of the ADA as enforced by 28 CFR §36.302(c);requires a public accommodation to modify policies, practices and procedures to permit the use of a service animal; instead the hospital refused to do that.

COMPLAINT-PAGE 35

28 C.F.R. §36.302 (c)(6) both prohibits inquiries into Plaintiffs disabilities and prohibits a demand for the service animals documentation. The hospital did both. There are two legitimate inquires permitted by law, though even those inquiries are limited and neither of those inquiries were made.

C. 28CFR §36.302 (c)(7) mandates that individuals with disabilities shall be permitted to go everywhere with their service animal that other patrons are permitted. The hospital flatly refused to do this.

D. The ADA Title III provides a private right of action for those who are discriminated against in violation of it; 42 USC §12182(a)(1). Plaintiff is entitled to have her reasonable fees, costs and expenses paid for by the Defendants pursuant to 42 USC§12205.

### 13. SECOND CLAIM FOR RELIEF

Violation of the Americans With Disabilities Act Title III 42

U.S.C. §12182(b)(2)(A)(ii)

(Policies, practices, and procedures denying equal benefits)

A. Plaintiff re-alleges all prior paragraphs of the Complaint as if set forth fully herein. The ADA provides a private right of action for any person who is being subjected to discrimination in violation of Title III 42 USC §12182(a)(1).

COMPLAINT-PAGE 36

B. Defendant MONTAGE HEALTH employee Security Officer indicated that they were going to be taking my dog away from me and inquired if the dog was aggressive or would bite, this officer smiled during his statements and put on gloves. The ADA Title III specifically makes it unlawful to deny individuals with disabilities with unequal benefit and to relegate those to a different or separate benefit, 42 USC 12182(b)(1)(A)(ii)-(iii);28 CFR 36.202(b)(c), and the most integrated setting appropriate 42 USC 12182(b)(1)(B); 28 CFR 36.203(a).

C. Congress enacted the ADA to address the continual various forms of discrimination including overprotective rules and policies and to make modifications to facilities and practices and relegation to lesser services, programs, activities or other opportunities USC 42 12101(a)(5).

D. "no individual shall be discriminated against on the basis of disability in the full and equal enjoyment of goods, services, facilities, privileges, advantages, or accommodations of any public place of accommodation 42 USC 12182. The lack of physical access to facilities was not the only one of several major areas of discrimination to be addressed H.R.Rep.No.485, Pt. 3, 101[st] Cong., 2d Sess. 54 (1990). "this title prohibits, as well, discrimination in the provision of programs and activities.

COMPLAINT-PAGE 37

MPD told Plaintiff to provide proof and give it to MPD and they would give it to hospital staff. Plaintiff was then told that the dog would have to be taken away from her while a doctor evaluated the Plaintiff. Dr. Leslie D. McDaniel, MD required Plaintiff to answer Dr. McDaniel's questions and separated the Plaintiff from her "service animal" during this process.

E. The ADA Act also applies to any policy, practice or procedure that operates to deprive or diminish disabled individuals full and equal enjoyment of privileges and service. 42USC 12182. Thus a public accommodation may not have a policy, practice or procedure that excludes individuals from services 42USC 12182(b)(2)(A)(ii). In *Rendon v. Valleycrest Prod., Ltd., 294 F3d 1279, (11ᵗʰ Cir. 2002) that:* "Title III covers tangible barriers and intangible barriers such as eligibility requirements, screening rules of discriminatory policies and procedures that restrict an individual's rights to enjoy those services and privileges."

F. The ADA is over 20 years old, Defendant MONTAGE HEALTH knows they must comply with the ADA Title III. Under 42 U.S.C. Section 12188(a)(1):nothing in this section shall require a person with a disability to engage in futile gesture if that person has notice an organization does not intend to comply provisionally.

COMPLAINT-PAGE 38

## 14. THIRD CLAIM FOR RELIEF

### Violation of the UNRUH Civil Rights Act § 51

A.The Unruh Civil Rights Act is a piece of California legislation that specifically outlaws discrimination based upon disability and includes hospitals and all persons are free and equal and are entitled to the full and equal accommodations, advantages, facilities, privileges or services in all establishments of every kind whatsoever.

## 15. FOURTH CLAIM FOR RELIEF

### Violation of The Rehabilitation Act 1973 § 504

### 29 U.S.C. §701

A.The Rehabilitation Act of 1973 is a federal law codified as 29 USC Section 701, to establish responsibility in health and welfare with respect to individuals with disabilities and in those receiving federal financial assistance. Section 504 may be enforced through private civil actions and it is unnecessary to receive a right to sue letter before initiating action in court.

## 16. FIFTH CLAIM FOR RELIEF

### Negligence All Defendants

A.Plaintiff re-alleges all prior paragraphs as if set forth fully herein. Plaintiff asserts that all Defendants failed to exercise appropriate and ethical care taking into account the

COMPLAINT-PAGE 39

the potential harm they might foreseeably cause to other people or property. Plaintiff suffered harm to property, physical and mental suffering. Defendants (all) had a duty of care to exercise reasonable care. The Defendants (all) breached that duty of care through act and or culpable omission. The Defendants (all) caused damages as result of that act or omission and Plaintiff was injured. The injury to the Plaintiff was a reasonably foreseeable consequence of the Defendants (all) acts or omissions.

17. SIXTH CLAIM FOR RELIEF

Intentional Infliction of Emotional Distress – All Defendants

A. Plaintiff is allowed to recover for severe emotional distress caused by another individual who intentionally or recklessly inflicts emotional distress by behaving in an extreme and outrageous way. Defendants (all) acted intentionally or recklessly. Defendants (all) conduct was extreme and outrageous. Defendants (all) acts were the cause of Plaintiffs distress. Plaintiff suffered severe emotional distress as a result of Defendants conduct. Defendants (all) conduct is such that it would cause a reasonable person to be outraged. There was a pattern of conduct, Plaintiff was vulnerable and Defendants knew it and were in a position of power and owed a duty of care.

COMPLAINT-PAGE 40

## 18. SEVENTH CLAIM FOR RELIEF

### Negligent Infliction of Emotional Distress – All Defendants

A. Defendants (all) had a legal duty to use reasonable care to avoid causing emotional distress to Plaintiff and Defendants (all) failed this duty and is liable for monetary damages to the injured Plaintiff. Plaintiff need not prove intent to infict distress. That if the Court finds that is an accidental infliction it is sufficient to support the cause of action.

## 19. EIGHTH CLAIM FOR RELIEF

### Compensatory Damages – All Defendants

A. Plaintiff requests the Court grant Compensatory Damages to the claimant for loss, injury and harm suffered as a result of Defendants (all) breach of duty that caused loss in the aforementioned acts and omissions. Plaintiff asserts Defendants breach of duty caused the loss of damage to property, physical and mental injury, pain and suffering and emotional distress. Defendant's wrongful conduct was the proximate cause of Plaintiffs injury and was reasonably foreseeable to cause harm.

## 20. NINTH CLAIM FOR RELIEF

### Punitive/Exemplary Damages – All Defendants

A. Plaintiff requests the Court grant Punitive or Exemplary Damages. Plaintiff asks the Court to punish Defendants (all) to

COMPLAINT-PAGE 41

reform or deter the Defendants (all) from engaging in similar conduct to that which formed the basis of the civil action. Plaintiff seeks these damages under the assertion that compensatory damages are deemed in this case an inadequate remedy and paid in excess of Plaintiffs injuries because the Defendants conduct was both egregious and insidious.

***PRAYER FOR RELIEF WHEREFORE***, based upon the allegations asserted herein, Plaintiff respectfully requests the Court to declare that Defendants violated Plaintiffs rights under the: Eighth and Fourteenth Amendment 42 U.S.C. §1983, Title III ADA 42 U.S.C., UNRUH Civil Rights Act §51, The Rehabilitation Act 1973 § 504 29 U.S.C. §701 and find that Defendants (all) acted with Negligence, and the intent to cause the Intentional Infliction of Emotional Distress or Negligent Infliction of Emotional Distress and the award of Compensatory and Punitive or Exemplary Damages in an amount to be determined at trial and reasonable fees and costs pursuant to 28 U.S.C. § 1920, 42 U.S.C.§ 1988, as well as California State law provisions and ***All other such relief as this Court deems just and proper.***

***JURY DEMAND*** Pursuant to Rule 38 of the Federal Rules of Civil Procedure, Plaintiff hereby requests a jury trial.

Respectfully submitted this 19th day of March, 2021.

COMPLAINT-PAGE 42