Cynthia S. Wills
PO Box 7113
Carmel-By-The-Sea, CA 93921
Phone Number: 831-233-0727
Fax Number: n/a
E-mail Address: n/a
Plaintiff Pro Se

FILED
DEC 28 2021
CLERK, U.S. DISTRICT COURT
NORTH DISTRICT OF CALIFORNIA

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
SAN FRANCISCO DIVISION

CYNTHIA S. WILLS,

Plaintiff,

v.

CITY OF MONTEREY; MONTEREY POLICE DEPARTMENT, HARBOR PATROL; and MONTAGE HEALTH,

Defendant's,

Case No. 3:21-cv-01998-EMC

PLAINTIFF'S FIRST AMENDED COMPLAINT: VIOLATION EIGHTH and FOURTEENTH AMENDMENTS 42 U.S.C. §1983; TITLE III ADA 42 U.S.C.; UNRUH CIVIL RIGHTS ACT § 51; THE REHABILTATION ACT 1973 § 504 29 U.S.C. § 701; NEGLIGENCE; INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS; NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS; COMPENSATORY and PUNITIVE/ EXEMPLARY DAMAGES......

DEMAND FOR JURY TRIAL

Honorable District Judge: Edward M. Chen

*First Amended Complaint Due:December 28, 2021*
*Original Complaint Filing March 19, 2021*

1. JURISDICTION

A. The Court has subject matter jurisdiction under 28 U.S.C. §1331 1343 (a) (3) (4), and 1367. Plaintiff files this action under 42 U.S.C. §1983 asserting violation of rights under the United States Constitutions' Eighth and Fourteenth Amendments; Title III ADA 42 U.S.C.; The UNRUH Civil Rights Act §51; The Rehabilitation Act 1973 §504; and 29 U.S.C. § 701. The Court has supplemental jurisdiction pursuant to 28 U.S.C. 1367; [page 1]

PLAINTIFF'S AMENDED COMPLAINT: VIOLATION EIGHTH AND FOURTEENTH AMENDMENTS 42 USC §1983; TITLE III ADA 42 USC; UNRUH CIVIL RIGHTS ACT § 51; THE REHABILITATION ACT 1973 § 504 29 USC §701; NEGLIGENCE; INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS; NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS; COMPENSATORY AND PUNITIVE/EXEMPLARY DAMAGES...

whereas Plaintiffs' state law constitutional claims originate from the same incidents as her federal constitutional claims. In addition, Plaintiff asserts claims for Negligence, Intentional Infliction of Emotional Distress, Negligent Infliction of Emotional Distress, Compensatory and Punitive/Exemplary Damages.......

VENUE

B. Venue is proper in this civil action as it complies with 28 U.S.C. § 1391 (b) and residency (c), (d) as the Defendants are located within the District of California and a substantial amount of the acts and/or omissions giving rise to the claims contained herein have occurred or will occur in the District.

INTRADISTRICT ASSIGNMENT

C. This civil action should be assigned to the San Jose Division of the United States District Court of the Northern District of California because a substantial part of the events and/or omissions which give rise to this civil action occurred or will occur in Monterey County.

2. PARTIES

A. Plaintiff, CYNTHIA S. WILLS, an individual, is and, at all times relevant hereto , was a resident of Monterey County , California. Plaintiff was at all times relevant hereto, a resident of the City of Monterey.

B. Defendant CITY OF MONTEREY (hereinafter "City") is a municipal corporation, which is organized under the laws of the State of California, with the capacity to sue and be sued. The City is the political governmental entity, legally responsible for the actions of the Monterey Police Department and Harbor Patrol, its employees officials and agents. The City is sued in its own right and on the basis of the acts or omissions of its employees, officials and agents.

[page 2]

PLAINTIFF'S AMENDED COMPLAINT: VIOLATION EIGHTH AND FOURTEENTH AMENDMENTS 42 USC §1983; TITLE III ADA 42 USC; UNRUH CIVIL RIGHTS ACT § 51; THE REHABILITATION ACT 1973 § 504 29 USC §701; NEGLIGENCE; INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS; NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS; COMPENSATORY AND PUNITIVE/EXEMPLARY DAMAGES...

C. Defendant MONTEREY POLICE DEPARTMENT (hereinafter "Monterey PD") is the municipal agency legally responsible for the enforcement of the Monterey Municipal/City Code, Ordinance 3281 § 20-85 defined in Article 1 Definitions § 23-2 and for policing the City. The Monterey Police Department is sued in its own right and on the basis of the acts and omissions of its employees, officials and agents.

D. Defendant MONTEREY HARBOR PATROL, (hereinafter "Monterey HP") is the municipal agency responsible for policing the harbor and marina and for enforcement of Monterey Municipal /City Code Ordinance 3548 § 2, Article 1 and 3 §17-1 through 17-17. Monterey HP  shall have the full authority in the interpretation and enforcement of all rules and regulations affecting the harbor/marina and the issue of citations for the violations of any of the provisions of the code. The Monterey HP is sued in its own right and on the basis of the acts of omissions of its employees, officials and agents.

E. Defendant MONTAGE HEALTH is a domestic nonprofit, general cooperative corporation with the corporate name of Montage Health with California Corporate Number C1099282 and a principal address of 23625 Holman Highway, Monterey, California. On December 04, 2006 a Certificate of Amendment of the Articles of Incorporation for the Community Hospital Foundation was filed with the Secretary of State. On February 05, 2016 a Certificate of Amendment of the Articles of Incorporation for the Community Hospital Foundation was filed with the Secretary of State, changing the name to MONTAGE HEALTH. On December 29, 2016 a "Merger Agreement" was filed with the Secretary of State by & between MONTAGE HEALTH and Community Hospital Endowments; an Execution Version was filed on the same date between MONTAGE HEALTH and Community Hospital Properties. On March 08, 2018 a Statement of Information      [page 3]

PLAINTIFF'S AMENDED COMPLAINT: VIOLATION  EIGHTH AND FOURTEENTH  AMENDMENTS 42 USC §1983; TITLE III ADA 42 USC; UNRUH CIVIL RIGHTS ACT § 51; THE REHABILITATION ACT 1973 § 504 29 USC §701; NEGLIGENCE; INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS; NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS; COMPENSATORY AND PUNITIVE/EXEMPLARY DAMAGES…

was filed with the Secretary of State for MONTAGE HEALTH with California Corporate Number C1099282. The most recent filing for Defendant MONTAGE HEALTH is December 27, 2019, California Corporate Number C1099282 filed with the Secretary of State with a principal address of 23625 Holman Highway, Monterey California. Defendant MONTAGE HEALTH is a corporation with the capacity to sue and be sued. The Defendant MONTAGE HEALTH is sued in its own right and on the basis of the acts or omissions of employees, officials and agents.

3. PRELIMINARY STATEMENT

In 2015 the United States Department of Justice filed a STATEMENT OF INTEREST in the case of Bell v. City of Boise. The Department of Justice stated: "In recent years, some people who were affected by the economic downturn and foreclosure crisis have become homeless."[1] " the United States files this Statement of Interest to make clear that the *Jones* framework is the appropriate legal framework for analyzing Plaintiffs' Eighth Amendment claims."[2] "Pursuant to the Violent Crime Control and Law Enforcement Act of 1994, 42 U.S.C. § 14141 ("Section 14141"), the United States enforces the rights of individuals to be free from unconstitutional and abusive policing."[3] "Communities nationwide are suffering from a shortage of affordable housing."[1] "If the Court finds that it is impossible for homeless individuals to secure shelter.......then the Court should also find that the enforcement of the ordinances under those circumstances criminalizes the status of being homeless and violates the Eighth Amendment to the Constitution."[2] In the 2019 Executive Summary of

---

[1] STATEMENT OF INTEREST OF THE UNITED STATES (D. Idaho), August 06, 2015, pg.2.

[2] STATEMENT OF INTEREST OF THE UNITED STATES (D Idaho), August 06, 2015, pg. 4.

[3] [1] [2] STATEMENT OF INTEREST OF THE UNITED STATES (D Idaho), August 06, 2015, pg. 4, 14, 16.

[page 4]

PLAINTIFF'S AMENDED COMPLAINT: VIOLATION EIGHTH AND FOURTEENTH AMENDMENTS 42 USC §1983; TITLE III ADA 42 USC; UNRUH CIVIL RIGHTS ACT § 51; THE REHABILITATION ACT 1973 § 504 29 USC §701; NEGLIGENCE; INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS; NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS; COMPENSATORY AND PUNITIVE/EXEMPLARY DAMAGES…

the Monterey County Homeless Census & Survey it was recorded: a "census population of 2,422, with greater than 72% being over the age of 25, 35% female, 93 % sexual orientation straight, 50% white, 18% justice system involvement, 78% residence prior to homelessness, 76% unsheltered, 86% of the chronically homeless unsheltered, accommodation on census count night 7% motel/hotel, 19% vehicle, 22% outdoors, 18% tent."[3a] "55% first episode of homelessness."[3b] "...........inability to afford rent 76%."[3c] The 2019 Monterey County Homeless Count and Survey was performed using HUD-recommended practices for counting and surveying the homeless population. The Applied Survey Research (ASR) is a social research firm dedicated to helping people build better communities. Defendants' City of Monterey, Monterey PD and Monterey HP have violated Plaintiffs' absolute right to travel in violation of the Fourteenth Amendment of the U.S. Constitutions' Equal Protection Clause (including vagueness and overbreadth) and California State Law. Section 1983 of Title 42 of the U.S. Code authorizes parties to enforce federal constitutional rights against municipalities and local governments. Section 242 of Title 18 makes it unlawful for a person acting under color of any law to willfully deprive a person of rights under Constitution and includes local officials within their lawful authority, but also acts done beyond the bounds of that official's lawful authority. Under Title III 42 U.S.C ADA 12181 (7) (F) a hospital is a private entity considered a public accommodation. Section 12182 prohibits discrimination on the basis of disability in the full and equal enjoyment of services, facilities, privilege, and

[3a] [3b] [3c] MONTEREY COUNTY HOMELESS CENSUS & SURVEY 2019 EXECUTIVE SUMMARY, 01/31/19. Pg. 7, 8, 48.

accommodations. Section 12188 provides availability of remedies to any person who is being subjected to discrimination and under authority of court in a civil action under (1) (B) the court may grant equitable relief that such court considers appropriate and may award monetary damages (i) not exceeding $50,000 for a first violation. The findings; purpose; policy of 29 U.S.C. 701 are that millions of Americans have one or more disabilities and the numbers are increasing. Under section (5) individuals continually encounter various forms of discrimination in public accommodations such as health services (1) and lack of respect for individual dignity. The UNRUH Civil Rights Act, California Civil Code §51 provides protection from discrimination by all public establishments in accommodations because of disability among others. Section 504 of the 1973 Rehabilitation Act is the first civil rights law to be enacted in the U.S. addressing disability and it prohibits discrimination against individuals with disabilities in programs that receive federal financial assistance. This Act ultimately set the stage for the American with Disabilities Act which final version of the bill was signed into law on July 26, 1990 by President George H.W. Bush with amendments in 2008 effective as of January 01, 2009. A significant development in the field of civil rights litigation has been the emergence of monetary damages as remedy for the enforcement of constitutional rights allowing Plaintiffs to recover damages for a wide range of violations. Compensatory damages are proper for Defendants' constitutional violations. Punitive damages are additionally awarded and the amount of the award, is dependent upon the Defendants' financial circumstances and serves mainly to deter, vindicate, penalize and provide incentives to ensure Defendants' compliance with the law.

[page 6]

PLAINTIFF'S AMENDED COMPLAINT: VIOLATION EIGHTH AND FOURTEENTH AMENDMENTS 42 USC §1983; TITLE III ADA 42 USC; UNRUH CIVIL RIGHTS ACT § 51; THE REHABILITATION ACT 1973 § 504 29 USC §701; NEGLIGENCE; INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS; NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS; COMPENSATORY AND PUNITIVE/EXEMPLARY DAMAGES…

4. BACKGROUND

In 2019 Plaintiff was detrimentally impacted by the nationwide shortage of affordable housing referred to as the economic downturn and foreclosure crisis by the United States Department of Justice in *Bell v. Boise (D. Idaho) 08/06/15.* Plaintiff attempted relocation to "two" different states neighboring California but returned when it was clear those states were equally dependent economically upon the tourist industry. Plaintiff, reluctantly concluded that traditional housing was in a state of extreme shortages and therefore relied entirely upon the tourist industries supply of hotels, inns, bed and breakfast, VRBO's, air BNB's and motels to remain housed at least temporarily. Unfortunately "and" fortunately Plaintiff became stranded in her car when these "tourist priced accommodations" sold out and even though Plaintiff traveled up to an hour outside the area, these accommodations were sold out as well. Plaintiff once again reluctantly, concluded that "spending the night in her car was strategically sound in comparison to spending a hundred dollars each night on hotel accommodations." Plaintiff attempted several additional strategies to resolve her lack of housing. Including, traveling several hundred miles for "off season extended stay" hotel rates, starting her own business, and extensive room share searches. Ultimately, Plaintiff was physically and mentally exhausted, out of ideas, money, in shock and without shelter of any kind. Plaintiff had spent many nights in her car in Seaside, California without issue and now found herself directly adjacent to the Seaside Police Department without shelter in a brightly lit area and simply stayed awake the first few nights. The Seaside Police Department ***never*** "once" harassed me in any way seemed very empathetic to my situation and always had stellar intentions and treated me with the utmost [page 7]

respect, "every single time I encountered them, without exception." Ultimately, Plaintiff encountered several individuals whom had been homeless for approximately thirty years. These individuals were substance abusers of alcohol, crack, methamphetamines and heroin. One of these individuals whom had recently broken up with his girlfriend got the wrong idea when I gave he and his friends sleeping bags, pillows and detox advice. Once Plaintiff rejected his advances he became "verbally and physically threatening" and shortly thereafter this man's friend threatened to set fire to the Plaintiff and her belongings. Plaintiff spoke with Seaside Police and decided to leave Seaside and return to Monterey where Plaintiff had stayed for "months in at least twelve different" hotels. Almost immediately, Plaintiff realized that the man whom had threatened and stalked her, whose friend threatened to set her and her belongs on fire found and began stalking her in Monterey. Plaintiff had not had any interactions with Monterey Police at this point and time and once reported that this man had been stalking her Monterey PD strenuously advised Plaintiff to get a restraining order. Ultimately, Plaintiff filed for the restraining order and a "Civil Harassment (with violence) Restraining Order" was granted for two years beginning 04/30/19.

5. (a) STATEMENT OF FACTS

Plaintiff contends that the factual allegations stated herein "do not" represent each and every event, claim and violation of law that Plaintiff asserts or will assert against Defendant City of Monterey, Monterey Police Department and Monterey Harbor Patrol; these are the grotesque events that prompted the Plaintiff to file this civil action claiming violation of laws.

A. On or about spring of 2019 (approx. March) Plaintiff set up a tent after dark in a park in Monterey near Del Monte beach where it was clear that other individuals were sheltering at night. Plaintiff was asleep when suddenly a Monterey PD patrol car [page 8]

shined lights on the tent and Plaintiff could hear the officers laughing as they approached the tent. Plaintiff was instructed not to set up the tent again in the area.

B. In the spring of 2019 Plaintiff (with no other place to go) set up a tent on Del Monte Beach in Monterey. Plaintiff was startled by a flashlight and two individuals outside her tent whom identified themselves as Monterey PD and demanded she unzip the entrance to the tent so they could speak to her. Plaintiff complied with the request immediately once she unlocked a lock on the zipper of the tent entrance. These MPD officers told the Plaintiff to pack up the tent and vacate the area immediately or they would arrest her. Plaintiff began to cry and told the officers that she had no other place to go and that a homeless man had been threatening and stalking her and that it was after midnight and she was extremely tired and afraid. The officers told her to comply immediately or she would be arrested and asked her for her license. Plaintiff gave the officers her license number which one officer verified and then asked Plaintiff if her hair was brown or blonde. Plaintiff asked for the officers' names and they replied **Officers Brian Nino and Scott Collier. Officer Brian Nino** then handed Plaintiff an eviction notice while **Officer** Scott **Collier** looked on. The following morning Plaintiff hand delivered to the Monterey PD a letter addressed to the Chief of Police about **Officers' Brian Nino** and Scot Colliers' actions and the eviction notice.

C. In the spring of 2019 Monterey PD had received Plaintiffs Civil Harassment (with violence) Restraining Order which they were attempting to serve upon the homeless man that had been stalking me. Ultimately, **Officer Jesse** Phillips served the Restraining Order upon the party and then told Plaintiff to leave the area when the Court Order specifically instructed that the Defendant in that Order stay a specific distance from Plaintiff and if saw the Plaintiff was to leave the area by the specified distance. Plaintiff followed **Officer Jesse** Phillip demand to leave the area.

D. In the spring of 2019 Plaintiff could not get the Monterey PD to enforce the Restraining Order filed against the Seaside homeless man whom had threatened and stalked her. Every single time the homeless man violated the Court Order Monterey PD refused to enforce the Order and arrest him. Plaintiff had many conversations with the officers and filed many written complaints with Monterey [page 9]

Chief of Police but there was "no" enforcement.

E. In spring of 2019 Plaintiff was setting up her tent on Del Monte Beach when a Monterey PD Patrol car approached her. The Officer stated that he was a superior with MPD and he was specifically instructing her **"do not put up that tent"** and further stated **"if I come back and find that tent up I am going to give you a citation for illegal camping"**. As the Officer drove off Plaintiffs' tent was struck by wind breaking the tent pole and the fully erected tent was blown 50 feet before Plaintiff recovered it. Ultimately, Plaintiff vacated this area and moved to a pitch dark area near the Coast Guard in Monterey. As always Plaintiff took down the tent every morning leaving nothing behind.

F. One night at the Coast Guard after midnight Plaintiff awoke to find two males outside her tent attempting to set her tent on fire with a lighter and a can of some type of fuel Plaintiff then heard a voice in the distance yelling I told you not to go to those feeds." *(A week ago Plaintiff was approached by a man rumored to sell heroin to the homeless and he stated to Plaintiff; on behalf of the man whom was served with the Restraining Order; that she was not to interfere with this mans' ability to attend food gatherings for the homeless in the area even if he violated the Courts' Restraining Order.)* Plaintiff talked with Officer DiMaggio telling him that the men had run off but that she was confident who was behind the incident. In the morning a kind, gentle man whom Plaintiff knew told her he had gotten up in the middle of the night and seen two males trying to set her tent on fire with a lighter and a can of something they were spraying. Plaintiff relayed this to MPD but nothing was done. **That day Plaintiff made the decision to throw the tent away**. Plaintiff had been harassed by MPD. The City of Monterey beachcombers had driven by her tent many mornings with huge vehicles trying to deter campers on the beach.

G. Plaintiff continued to report the Restraining Order violations. Ultimately, Plaintiff encountered Officer Welch about a restraining order violation and Plaintiff begged Welch to arrest him recounting the attempt to burn Plaintiff s tent while she was sleeping. A short while later Welch informed Plaintiff that he had arrested the man. From that point forward the man ceased to violate the Restraining Order.

H. Plaintiff began to stay near the Monterey Wharf without the tent, specifically the Custom House. One night **Officer Scott Collier** approached Plaintiff and told her if [page 10]

PLAINTIFF'S AMENDED COMPLAINT: VIOLATION EIGHTH AND FOURTEENTH AMENDMENTS 42 USC §1983; TITLE III ADA 42 USC; UNRUH CIVIL RIGHTS ACT § 51; THE REHABILITATION ACT 1973 § 504 29 USC §701; NEGLIGENCE; INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS; NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS; COMPENSATORY AND PUNITIVE/EXEMPLARY DAMAGES…

she didn't vacate she would be given a citation for illegal camping. With no tent and no place to go Plaintiff packed up and vacated the area.

I. In the months following the spring of 2019 Officer Welch's Restraining Order arrest had halted the stalking and harassmentby the Seaside homeless man. Plaintiff now realized this individuals friends who drank and did drugs with him were harassing the Plaintiff on his behalf. The stalking, threatening and harassing mostly occurred at night when Plaintiff was sleeping. One night Plaintiff was asleep at the Custom House on a bench and awoke to find a man she had never encountered standing over her head. Plaintiff screamed and contacted Monterey Harbor Patrol. Harbor Patrol stated that he heard Plaintiffs scream but Harbor Patrol refused to do anything.

J. Plaintiff moved to a different area nearby. On one night are extremely intoxicated man approached her while she was sleeping, Plaintiff screamed and then stood up and told him to leave her alone. A short while later he returned again. Plaintiff contacted MPD and they refused to do anything and instead told Plaintiff she was illegally camping and could get a citation.

K. In 2019 Plaintiff was talking with a very nice man that was living in a tent with his wife and three dogs and he told Plaintiff that one of his dogs was stolen the other day. Ultimately, Plaintiff recovered this dog outside a liquor store and Monterey PD arrested the homeless man for stealing the dog. Officer Delgado told Plaintiff if this man contacted or coerced her she should contact the PD. After this man got out of jail, Plaintiff was sleeping one night and found this man standing near her as she slept. Over the next hour he returned and another man returned approaching Plaintiff as she slept.Plaintiff told both individuals to leave her alone. Plaintiffreported it to MPD but nothing was done and Plaintiff was threatened with a citation for camping illegally.

L. Plaintiff was sleeping in the same general area on another night and Plaintiff awoke to find a different male moving closerand closer to the area she was sleeping. Plaintiff contacted theMPD. **Officers' Brian Nino** and **Scott Collier** arrived and refused to do anything about it and stated Plaintiff was illegally camping and she could receive a citation. **Officers' Brian Nino** and **Scott Collier** kept [page 11]

threatening Plaintiff with a citation. Plaintiff requested to speak with their supervisor whom showed up and reiterated that Plaintiff was illegally camping and could be given a citation.

M. Plaintiff encountered the same male the next day whom threatened her physically and screamed at her. Plaintiff contacted MPD, Officer Delgado and Officer Pinkas arrested him and Plaintiff never had another problem with the man again, ever.

N. On another night Plaintiff was preparing to sleep on CannerRow. A Monterey PD patrol car drove by her and **Officer Briar Nino** and **Officer Kris Richardson** approached Plaintiff on foot. Plaintiff was told that she was illegally camping and to vacatethe area or she would be given a citation and/or arrested. During this encounter **Officer Brian Nino** asked Plaintiff what had happened with the man whom I had a Restraining Order against Plaintiff was puzzled about **Officer Brian Nino's** interest in this but answered "he violated a Court Order and was arrested because of that fact." In Plaintiffs last encounter with **Officer Brian Nino** she made it clear that she would not be speaking to **Officer Brian Nino** and **Officer Scott Collier** again stating she felt "both Officers had bad intentions towards her" because ofher numerous complaints to the Monterey Police Department Chief.

P. Plaintiff feeling hopeless most of the time still managed to shower each day, did laundry weekly and one day walked eight miles. Plaintiff did not drink or do drugs. One day Plaintiff met the Director of Operations of an Art Expo nearby and told this young woman that she needed a job and told her about the two attempts to set her tent afire as she slept. This woman told her "I'm going to do everything I can to help you." Very soon thereafter this individual kept her promise and gave her a key. The plan was to keep Plaintiff and her 15 year old dog safe at night and to help Plaintiff by giving her a job as the gallery was doing some

night and to help Plaintiff by giving her a job as the gallery was doing some improvements to the grounds and spray painting furniture. One night Plaintiff was interrupted by a very aggressive Monterey Harbor Patrol Security worker named **Alexander Callison** who demanded to know what Plaintiff was doing at the Art gallery *(Plaintiff had initially asked the Director of Operations of the gallery about this concern and she replied that the gallery was privately leased and apologies would follow if anyone questioned the Plaintiff and to call her immediately if Plaintiff had any problems.)* So, Plaintiff did as instructed and told **Alexander Callison** that she was at the gallery with the knowledge of the Director of Operations and had been given a key and if he had any questions to call her cell number and Plaintiff proceeded to give **Callison** the phone number and closed the gate. **Callison** then told Plaintiff that he was calling the Monterey Police Department. **Callison** told the Plaintiff that the Director of Operations did not answer her cell phone. Plaintiff, did not believe **Callison** and so Plaintiff went behind a closed door and called and she answered immediately. I told her about the situation and asked her to come down as soon as possible and she told Plaintiff she was on her way and would be there shortly. Very soon Monterey Police Department showed up. All the Officers that arrived were the officers the Plaintiff had complained to the Monterey Police Department Chief Hober about: **Officer Jesse Phillips, Officer Kris Richardson, Officer Scott Collier.** Each Officer was **extremely aggressive,** except **Officer Scott Collier who stood in plain clothes a few feet away** grinning. At all times during the entire encounter Plaintiff remained extremely calm and quietly stated that the Director of the gallery was on her way and Plaintiff had permission to be there. **Officer Kris Richardson immediately got two inches from Plaintiffs face and started yelling at the top of his lungs and spitting in her face saying** "DO YOU WANT ME TO THROW YOUR DOG IN THE POUND, DO YOU WANT ME TO ARREST YOU" **hollering and spitting inches away from Plaintiffs' face repeating himself over and over.** Plaintiff stood still and said nothing. Plaintiffs 15 year old dog was in the bathroom (and Plaintiff did not know this at the time but the dog had heart failure). Shortly

[page 13]

PLAINTIFF'S AMENDED COMPLAINT: VIOLATION EIGHTH AND FOURTEENTH AMENDMENTS 42 USC §1983; TITLE III ADA 42 USC; UNRUH CIVIL RIGHTS ACT § 51; THE REHABILITATION ACT 1973 § 504 29 USC §701; NEGLIGENCE; INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS; NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS; COMPENSATORY AND PUNITIVE/EXEMPLARY DAMAGES…

thereafter, I heard the Director of the galleries voice, **Officer Kris Richardson went** out to **her and** I **could hear him threatening her with** arrest **and talking very loudly** and aggressively **towards her and would not let her into the gallery.** At that time I asked **Officer Jessse Phillips "what** Scott **Collier was doing here in plain clothes". Officer Jesse Phillips** replied "he's **just along for the ride."** During **Officer Kris Richardsons'** absence I took out my cell phone and left a message for Officer Jake Pinkas about the current events and while I left the message **Officer Jesse Phillips looked at the ground as though he was embarrassed.** Then **Kris Richardson returned leaving the** Director **outside the gate. Officer** Kris Richardson started yelling **again and** stated "GET OUT NOW AND DON'T COME BACK OR I'LL ARREST YOU". Plaintiff left immediately and went to speak with the Director of Operations, we sat in her car, both of us visibly shaken and I handed her the key she had given me. That night Plaintiff couldn't sleep. In the days to follow the Plaintiff made several calls about the events at the gallery. Plaintiff spoke with an individual who answered questions about the galleries lease and she stated "I hope those Officers don't get away with what they did and she stated I hope they don't cover up for them". The Plaintiff eventually contacted the Attorney for the City of Monterey. Plaintiff told her she would be filing a Civil Action against the City of Monterey, the Police Department and Harbor Patrol. Plaintiff warned that any further harassment and intimidation would be carefully noted and that it would be remedied in her civil action and advised her to address Plaintiffs concerns now.

Q. Plaintiff was sitting at the Custom House one afternoon when she saw and heard a confrontation between two individuals one of who yelled "I'm not a registered sex offender I was framed." Eventually the fight was over and the parties left the area and Plaintiff went out and sat down on the rock wall. Later the same individual returned and sat down and then approached me and stated "you probably don't know this but you're not allowed to sit down next to a musician". Plaintiff completely ignored him which angered him more. Eventually, Plaintiff left this persons "claimed area" closer to the Wharf about fifteen feet in front of him which really made him mad because Plaintiff was interfering with his panhandling. Plaintiff did not engage and continued doing what she was doing. He then came up behind her one night and stated "I had a dream that someone threw gasoline on you while you were sleeping". Plaintiff reported it to MPD and they made contact [page 14]

with him. The "seventeen" aforementioned incidents were not the only incidents of harassrnent by various individuals of the homeless community and/or the only incidents of harassment by Monterey Police Department and Monterey Harbor Patrol or the only violations of Plaintiffs rights. There are too many incidents to state in this document. These incidents are listed to show a pattern.

5. (b) STATEMENT OF FACTS

A. In March of 2019 Plaintiff was suffering from sleep deprivation having had inadequate sleep in duration and qualityand it was detrimentally affecting her health both physically and mentally. Plaintiff asserts that a health care facility such as a hospital should be well aware and informed of the effects of sleep deprivation; that a mere 35 hours of sleep deprivation in healthy individuals can negatively impact the brains ability to put events into proper perspective. Plaintiff needed sleep desperately and sought a physicians' assistance on an expedited basis and therefore went to the Community Hospital of the Monterey Peninsula (CHOMP) because she had sought treatment for asthma when it was an emergency related situation. Plaintiff had never been prescribed medication to help her sleep and felt the physician would prescribe it to help get immediate rest. Every time Plaintiff went to CHOMP she was accompanied by her "service animal", Plaintiff was "never" confronted before about her "service animal" at CHOMP. When Plaintiff arrived she was asked a series of questions about what brought her to the emergency department. Plaintiffs' exhaustion delayed her response so the nurse began answering her own questions she had posed to the Plaintiff. The intake process moved very quickly and Plaintiff had not slept well in months so her responses were delayed and Plaintiff had not realized at that point that the entire processing of her visit to the emergency room visit was now being based upon those initial questions that the intake nurse had answered for the Plaintiff. Plaintiff later realized that she was “extremely” susceptible to suggestion at that time and the whole purpose of her visit to CHOMP was now critically misguided. Plaintiff began to realize that her slow responses and fatigue and physical exhaustion were now being assessed from a mental health perspective and Plaintiff could not resolve it. To make matters worse Plaintiff did not want to do blood work but Plaintiff did the urine test hoping it would resolve any concerns about drug and alcohol use. Plaintiff asserts that Plaintiffs' medical condition and reasons for seeking [page 15]

medical care at their hospital based upon her status as an unsheltered individual. Plaintiff to the best of her knowledge understands that **Judy D. Blevins, RN; ERIN MARY SULLIVAN, MD** and **LESLIE D. MCDANIEL, MD** were employed at CHOMP. Defendant MONTAGE HEALTH refused to provide names of other employees involved in Plaintiffs care and "will be obtained in the discovery process".

B. In March 2019 DR. **ERIN MARY SULLIVAN, MD** sked Plaintiff "for written documentation that her dog was a service animal." The Plaintiff replied *"you do not have the right to ask for written documentation it is a violation of Federal Law."* Immediately Dr. Sullivan stated "she was going to speak with an administrative supervisor" and left the room.

C. Next the Plaintiff was told she would be moving to a different room. Plaintiff complied with the request. The room was directly next to the nurse's station. Once in the room a Security Officer sitting on a chair next to the room and the station indicated that they were going to be taking my dog away from me and inquired if the dog was aggressive or would bite. This Officer smiled during his statements and put on gloves.

D. Immediately Plaintiff stated that she wanted to call the Monterey Police Department and file a complaint. At that point in time the Plaintiff had not had any negative interaction with Monterey PD and was comforted in the fact that they would resolve the situation.

E. Monterey PD arrived with three officers all of whom came into Plaintiffs room. Plaintiff explained what was going on and the Officers told Plaintiff that the hospital "did not believe the Plaintiff that the dog was a "service animal" and that Plaintiff should provide written proof and give it to MPD and they would give it to the hospital staff." Plaintiff was in complete shock and panic and gave the document to MPD whom took it out of the room and gave it to hospital staff and returned to Plaintiff.

F. Then to Plaintiffs horror MPD stated that the dog would have to be taken away from her while a doctor evaluated the Plaintiff. Plaintiff reluctantly complied but demanded that one of the Monterey PD Officers specifically hold the animal close by the room and the Officer agreed. Immediately, **Plaintiffs service animal became distressed.** The dog was old and Plaintiff then realized that she had to comply with and do and say everything that needed to be said to return the Plaintiffs' "service animal to her as quickly as possible." [page 16]

G. Eventually **DR. LESLIE D. MCDANIEL, MD** arrived in Plaintiffs room. Plaintiff immediately stated to **DR. LESLIE D. MCDANIEL, MD** **"if you don't return my "service animal" immediately I will take legal action against the hospital for violating my rights."** The Plaintiff was then **required to answer DR. MCDANIELS questions.** Plaintiff reiterated over and over again that she demanded her **"service animal"** be returned to her **immediately. Plaintiff answered the doctors questions because they would not return the dog and would only release Plaintiff if she got a hotel.**

6. CLAIMS

A. Monterey Municipal Code Ordinance 3281 § 20-85 (06/2000) criminally punishes the occupation of any camper, trailer or other vehicle equipped for human habitation, the erection of any tent or other shelter, the arrangement of sleeping bags or bedding for the purpose of, or which will permit, remaining overnight the hours between 10:00 p.m. of one day and 6:00 a.m.of the following day. Section 23-3 states it shall be unlawful for any person to camp except in designated areas, enter or remain on the premises after established closing hours. It shall be unlawful for any person to enter or remain on the premises ofany City park outside of posted open hours. The City has changed the language of the ordinances in the past. The terms of this ordinance is broad such that it covers sleeping or resting in any public place and police officers have cited individuals for violation throughout the City. In Monterey many people experience homelessness on any given night. There are no non- faith based shelters in the **City of Monterey** for adult homeless individuals. Safe Passage is a co-ed transitional housing program for homeless youth ages 18-21 and I-HELP Interfaith Homeless Emergency Lodging Program is based on 60 ***"Monterey County" area churches and other faith based organizations.***

B. Many of those emergency shelter beds, moreover, are not available for persons with certain disabilities and some shelters are also overtly religious. Those individuals who are not able to find shelter have no choice but to sleep in the public places of the City of Monterey in violation of laws that prohibit "camping" or sleeping in public places. Monterey police officers routinely issue camping citations to person experiencing homelessness for sleeping, sitting, or talking with friends in public places-activities homeless persons should have the freedom to engage[page 17]

in without fear of police interference. Monterey police officers also issue disorderly conduct citations to persons experiencing homelessness merely for sleeping in discrete public places. These citations lead to convictions and jail time, which make it more difficult for Monterey's homeless population to obtain and keep employment and long-term housing. Thus, they continue to sleep in public   places despite the constant fear of being issued a citation or arrested by police. The Defendants have used the Ordinances to cite and arrest individuals  who cannot avoid violating  these  laws because they are homeless and no shelter is available to them and therefore are criminalized violating the protections of the Eighth Amendment of the United States Constitution.

C. Plaintiff brings this action for monetary damages pursuant to 42 U.S.C. §    1983 and 28 U.S.C. §    2201, 2202. Defendants under color of law have violated Plaintiffs' rights under the Eight Amendment of the U.S.C. as applied to the States through the Fourteenth Amendment. The Eighth Amendment precludes the enforcement of a law prohibiting sleeping outside against homeless individuals with no access to alternative shelter.

D. There are substantially more individuals experiencing homelessness in Monterey than there are available   beds. Defendants continue to enforce criminal laws against homeless individuals for sleeping outside. Federal law   defines   a "homeless individual" to include one who lacks a fixed, regular and adequate night time residence or a place not ordinarily used for sleeping such as streets,   automobiles,   parks and other public spaces. Defendants' action pose a health risk to homeless individuals   because it has a detrimental   effect on the ability to sleep which is a physical and mental necessity for people to properly function creating disruptions in cognitive function and exacerbates a number of health problems. Those who are eligible for housing  have  to  wait  long  periods  of  time.  The  City  of  Monterey  through  its  Police Department maintains a policy of enforcing anti-camping ordinances in violation of their rights.

E. Plaintiff received an eviction notice, threats of citations and Monterey Police Officers had knowledge that Plaintiff was experiencing homelessness and had no lawful place to sleep or rest within the City of Monterey because there were no shelters in the City of Monterey and used eviction notices, citations and/or the threats of citations to threaten Plaintiff [page 18]

PLAINTIFF'S AMENDED COMPLAINT: VIOLATION  EIGHTH  AND FOURTEENTH  AMENDMENTS 42 USC §1983; TITLE III ADA 42 USC; UNRUH CIVIL RIGHTS ACT § 51; THE REHABILITATION ACT 1973 § 504 29 USC §701; NEGLIGENCE; INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS; NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS; COMPENSATORY AND PUNITIVE/EXEMPLARY DAMAGES…

in an effort to drive her and other individuals out of the City of Monterey. Plaintiff often roamed constantly trying to choose the safest place to sleep, without being harassed, in addition, by the Police Department, which conduct was directed and condoned by the City of Monterey and the Police Department. City policymakers and other relevant individuals in positions of authority were aware of this practice and knowingly permitted these actions by Monterey Police Officers. Defendants' policies and practices caused Plaintiff to suffer humiliation, psychologically, physically and emotionally, degradation, pain, injury, financial loss and the loss of privacy and basic constitutional and human rights.

7. FIRST CLAIM FOR RELIEF

Violation of the Eighth Amendment to the United States Constitution

A. Plaintiff hereby incorporates all preceding paragraphs as if set forth fully herein. The Eighth Amendment of the U.S. Constitution prohibits cruel and unusual punishment.

B. The "Cruel and Unusual Punishments" Clause of the Eighth Amendment "imposes substantive limits on what can be made criminal and punished as such." *Ingraham v. Wright 430 US 651, 667-68 (1977).*

C. Laws criminalizing an individual's status, rather than specific conduct are therefore unconstitutional. *Robinson v. California, 370 U.S. 660 (1962).*

D. The Cruel and Unusual Punishments Clause prohibits the "enforcement of a statute prohibiting sleeping outside against homeless individuals with no access to alternative shelter." *Martin v. City of Boise, 920 F3d 584, 615 (9th Cir. 2019).*

E. Lack of adequate shelter space and affordable housing forces individuals experiencing homelessness to sleep in public spacesin the City of Monterey. There are substantially more individuals experiencing homelessness than there are shelter beds. Plaintiff had no way to comply with the cities ordinances yet Defendants still cited, threatened and harassed the Plaintiff for sleeping in public despite there were no shelters at all in the City of Monterey. Plaintiffs only option was to stay in a pervasively religious atmosphere to which she objects.

F. Defendants punished Plaintiff based upon her homeless status. Plaintiff was given an eviction notice and harassed for sleeping in public and Defendants actions penalized Plaintiff despite her rights under the Eighth Amendment of the U.S. Constitution as incorporated and applied to the states through the Fourteenth Amendment. [page 19]

8. SECOND CLAIM FOR RELIEF

Violation of Equal Protection and the Fundamental Right to Travel Fourteenth Amendment

A. Plaintiff hereby incorporates all preceding paragraphs as set forth fully herein. Defendants customs and policies for citing, harassing and threatening or arresting homeless individuals under Monterey Municipal Code 3281 § 20-85 made it impossible for Plaintiff to reside and/or travel in Monterey.

B. Plaintiff and others experiencing homelessness can't live in the City of Monterey without violating the city's anti-camping; ordinances because Plaintiff had a physical and mental need to sleep and Plaintiff had no other alternative. The enforcement of such ordinances has the effect and purpose of driving them out of the city or to deter them from entering to begin with and unlawfully interfered with the fundamental right of Plaintiff to travel inter/intra-state violating the Equal Protection Clause. The Monterey Municipal Code 3281 § 20-85 fails to provide direction to prevent the likelihood of discriminatory and arbitrary enforcement and is therefore; unconstitutionally vague in violation of the Fourteenth Amendment to the U.S. Constitution and Plaintiff seeks remedy to the violation of her rights.

9. THIRD CLAIM FOR RELIEF

Violation of Due Process-Overbreadth Fourteenth Amendment

A. Plaintiff hereby incorporates all preceding paragraphs as if set forth fully herein. Under the Eighth and Fourteenth Amendments to the U.S. Constitution penalizing harmless and involuntary conduct of Plaintiff for resting or sleeping in public spaces in the City of Monterey when she did not have c lawful or alternative place to shelter interferes with Plaintiffs constitutional rights as such, to be free from cruel and unusual punishment and the ability to travel inter/intra-state and are unconstitutionally overbroad.

10. CLAIMS

A. The Americans with Disabilities Act of 1990 42 U.S.C. § 12101 [1]is a civil rights law that prohibits discrimination based or disability and affords similar protections under the Civil Rights Act of 1964. The final version of the bill was signed into law on July 26, 1990 by President George H.W. Bush and later amended in 2008 with changes effective as of January 1, 2009. Plaintiff files this action against Defendant **MONTAGE HEALTH** in violation of the ADA Act and pendent state law claims.

B. Plaintiff has standing to pursue this case because Plaintiff is disabled pursuant to 42 U.S.C. 12102 suffering an impairment substantially limiting major life activities under 12102(2)(A) and uses a service animal who helps with daily life activities. Defendant MONTAGE HEALTH is a place of public accommodation pursuant to statutory and regulatory definitions under 42 USC 12181(7). Plaintiff has suffered concrete and particularized injury.

11. FIRST CLAIM FOR RELIEF

Violation of the Americans With Disabilities Act Title III 28 C.F.R. § 36.302 (Service Animals)

A. At all times Plaintiffs "service animal" was under Plaintiffs control as required by law. Plaintiffs "service animal" was threatened to be taken away and Plaintiff complied to decrease the stress placed upon both the Plaintiff and Plaintiff "service animal".

B. In March 2019 Dr. Erin Mary Sullivan, MD asked Plaintiff "for written documentation that her dog was a service animal". Defendant MONTAGE HEALTH actions violated Title III of the ADA as enforced by 28 CFR §36.302(c);requires a public accommodation to modify policies, practices and procedures to permit the use of a service animal; instead the hospital refused to do that. 28 C.F.R. §36.302 (c)(6) both prohibits inquiries into Plaintiffs disabilities and prohibits a demand for the service animals documentation. The hospital did both. There are wo legitimate inquiries permitted by law, though even those inquiries are limited and neither of those inquiries were made.

C. 28 CFR §36.302 (c)(7) mandates that individuals with disabilities shall be permitted to go everywhere with their service animal that other patrons are permitted. The hospital flatly refused to do this.

D. The ADA Title III provides a private right to action for those who are discriminated against in violation of it; 42 USC §12182 (a)(1). Plaintiff is entitled to have her reasonable fees, costs and expenses paid for by the Defendants pursuant to 42 SC§12205.

12. SECOND CLAIM FOR RELIEF

Violation of the Americans With Disabilities Act Title III 42 U.S.C. §12182 (b)(2)(A)(ii) (Policies, practices, and procedures denying equal benefits)

A. Plaintiff re-alleges all prior paragraphs of the Complaint as if set forth fully [page 21]

herein. The ADA provides a private right of action for any person who is being subjected to discrimination in violation of Title III 42 USC §12182 (a)(1).

B. Defendant MONTAGE HEALTH employee Security Officer indicated. that they were going to be taking my dog away from me and inquired if the dog was aggressive or would bite, this officer smiled during his statements and put on gloves. The ADA Title III specifically makes it unlawful to deny individuals with disabilities unequal benefit and to relegate those to a different or separate benefit, 42 USC 12182(b)(1)(A)(ii)- (iii);28 CFR 36.202(b)(c), and the most integrated setting appropriate 42 USC 12182(b)(1)(B); 28 CFR 36.203(a).

C. Congress enacted the ADA to address the continual various forms of discrimination including overprotective rules and policies and to make modifications to facilities and practices and relegation to lesser services, programs, activities or other opportunities USC 42 12101(a)(5).

D. "no individual shall be discriminated against on the basis oi disability in the full and equal enjoyment of goods, services, facilities, privileges, advantages, or accommodations of any public place of accommodation 42 USC 12182. The lack of physical access to facilities was not the only one of several major areas of discrimination to be addressed H.R.Rep.No.485, Pt. 3, 101st Cong., 2d Sess. 54 (1990). "this title prohibits, as well, discrimination in the provision of programs and activities. MPD told Plaintiff to provide proof and give it to MPD and they would give it to hospital staff. Plaintiff was then told that the dog would have to be taken away from her while a doctor; evaluated the Plaintiff. Dr. Leslie D. McDaniel, MD required Plaintiff to answer Dr. McDaniel's questions and separated the Plaintiff from her "service animal" during this process.

E. The ADA Act also applies to any policy, practice or procedure that operates to deprive or diminish disabled individuals full and equal enjoyment of privileges and service. 42USC 12182. Thus a public accommodation may not have a policy, practice or procedure that excludes individuals from services 42USC12182(b)(2)(A)(ii). In *Rendon v. Valleycrest Prod., Ltd., 29 F3d 1279, (11th Cir. 2002) that:* "Title III covers tangible barriers and intangible barriers such as eligibility requirements, screening rules of discriminatory policies and procedures that restrict an individual's rights to enjoy those services and privileges.

F. The ADA is over 20 years old, Defendant MONTAGE HEALTH know they must comply with the ADA Title III. Under 42 U.S.C. Section 12188(a)(1): nothing in this section shall require a person with a disability to engage in futile gesture if that person has notice an organization does not intend to comply provisionally.

13. THIRD CLAIM FOR RELIEF

Violation of the UNRUH Civil Rights Act § 51

A. The Unruh Civil Rights Act is a piece of Californi2 legislation that specifically outlaws discrimination based upon disability and includes hospitals and all persons are free and equal and are entitled to the full and equal accommodations, advantages, facilities, privileges or services in allestablishments of every kind whatsoever.

14. FOURTH CLAIM FOR RELIEF

Violation of The Rehabilitation Act 1973 §

504 U.S.C. §701

A. The Rehabilitation Act of 1973 is a federal law codified as 2 USC Section 701, to establish responsibility in health and welfare with respect to individuals with disabilities and in those receiving federal financial assistance. Section 504 may be enforced through private civil actions and it is unnecessary to receive a right to sue letter before initiating action in court.

15. FIFTH CLAIM FOR RELIEF

Negligence All Defendants

A. Plaintiff re-alleges all prior paragraphs as if set fortr. fully herein. Plaintiff asserts that all Defendants failed to exercise appropriate and ethical care taking into account the potential harm they might foreseeably cause to other people or property. Plaintiff suffered harm to property, physical and mental suffering. Defendants (all) had a duty of care to exercise reasonable care. The Defendants (all) breached that duty of care through act and or culpable omission. The Defendants (all) caused damages as result of that act or omission and Plaintiff was injured. The injury to the Plaintiff was a reasonably foreseeable consequence of the Defendant (all) acts or omissions.

16. SIXTHCLAIM FOR RELIEF

Intentional Infliction of Emotional Distress – All Defendants

A. Plaintiff is allowed to recover for severe emotional distress caused by another individual who intentionally or recklessly inflicts emotional distress by behaving in an extreme and outrageous way. Defendants (all) acted intentionally or recklessly. Defendants (all) conduct was extreme and outrageous. Defendants (all) acts were the cause of Plaintiffs distress. Plaintiff suffered severe emotional distress as a result of Defendants conduct. Defendants (all) conduct is such that it would cause a reasonable person to be outraged. There was a pattern of conduct, Plaintiff was vulnerable and Defendants knew it and were in a position of power and owed a duty of care.

17. SEVENTH CLAIM FOR RELIEF

Negligent Infliction of Emotional Distress - All Defendants

A. Defendants (all) had a legal duty to use reasonable care to avoid causing emotional distress to Plaintiff and Defendant(all) failed this duty and is liable for monetary damages to the injured Plaintiff. Plaintiff need not prove intent to inflict distress. That if the Court finds that is an accidentalinfliction it is sufficient to support the cause of action.

18. EIGTH CLAIM FOR RELIEF

Compensatory Damages – All Defendants

A. Plaintiff requests the Court grant Compensatory Damages to the claimant for loss, injury and harm suffered as a result of Defendants (all) breach of duty that caused loss in the aforementioned acts and omissions. Plaintiff asserts Defendants breach of duty caused the loss of damage to property, physical and mental injury, pain and suffering and emotional distress. Defendant's wrongful conduct was the proximate cause of Plaintiffs injury and was reasonably foreseeable to cause harm.

19. NINTH CLAIM FOR RELIEF

Punitive/Exemplary Damages - All Defendants

A. Plaintiff requests the Court grant Punitive or ExemplaryDamages. Plaintiff asks the Court to punish Defendants (all) to reform or deter the Defendants (all) in similar conduct to that which formed the basis of the civil action. Plaintiff seeks these damages under the assertion that compensatory damages are deemed in this case an inadequate

remedy and paid in excess of Plaintiffs injuries because the Defendants conduct was both egregious and insidious.

PLAINTIFFS' AMENDMENTS TO COMPLAINT DATED MARCH 19, 2021

20. VIOLATION OF THE ADA AS TO DEFENDANT MONTAGE HEALTH
FUNDAMENTAL ALTERATION
DIRECT THREAT

A. *Plaintiff hereby incorporates all preceding paragraphs as if set forth fully herein and pertains to this entire document from beginning to end and applies to all sections below*

B. In this Court's "Order Granting in Part and Denying in Part Defendants' Motions to Dismiss" September 13, 2021, page 6 lines 3-5; "As such, the first two elements of a Title III claim are met: Ms. Wills alleges she is disabled within the meaning of the ADA and Defendant is a private entity that owns a public accommodation. Complaint. At 35."

C. Plaintiff states relative to the third element, the denial of services, (Order, September 13, 2021, page 6, lines 6-14), "plaintiff was denied medical care that should have been provided by CHOMP": ***JUDY D. BLEVINS, RN stated to Plaintiff that she could not be admitted to the hospital ward because she had a service animal, DR. ERIN MARY SULLIVAN, MD requested the Plaintiff provide written documentation that her dog was a service animal; then when Plaintiff demanded Monterey Police Department come to CHOMP at the Plaintiffs request once Plaintiff was informed that her service animal would be taken away from her; Monterey Police Department advised Plaintiff that the hospital did not believe her and that Plaintiff should provide the written documentation that the dog was a service animal; once the Plaintiff provided the written documentation, THEN DR. LESLIE D. MCDANIEL, MD separated the Plaintiff from her service animal. Pages 25 and 26 of the original complaint "state how the Plaintiff and her service animal were threatened, how Plaintiffs service animal was interfered with carrying out its functions in assisting her and the denial of access to treatment." The denial of service fell between the cracks when the demand for written documentation was followed by the forced separation of Plaintiff from her service animal. .Defendants violated Title III 36.302(a)(6)(7), 36.202 (a)(b)(c)(d), Sec. 12181, 12182(a)(b)(1)(A)(i)(ii)(iii)(iv)(B)(C)(D)(i)(ii)(E)(2)(A)(i)(ii)(iii). MONTAGE HEALTH/CHOMP specifically violated 36.202 (a) Denial of participation or denial of opportunity to participate in or benefit from the goods services etc. of*** [page 25]

*a place of public accommodation. (b) Participation in unequal benefit etc. (c) Separate benefit that is different or separate from that provided to other individuals (d) Individual or class of individuals. Wills was told by JUDY D. BLEVINS, RN that she could not admit Plaintiff to the "ward" because Wills had a service animal and dogs were not allowed in the hospital ward. CHOMP specifically denied Wills' an admitted ward medical evaluation because Wills had a service animal and dogs were not allowed in the ward per CHOMP employees as stated herein. DR. LESLIE D. MCDANIEL, MD asked Plaintiff questions, apparently as part of a medical evaluation, after DR. ERIN MARY SULLIVAN, MD demanded written documentation that Wills dog was a service animal and once Wills informed SULLIVAN that it was a violation of federal law to do so. Wills was separated by her service animal and apparently evaluated by MCDANIELS' without her service animal.* A place of public accommodation shall permit the use of service animals to persons with a disability, Health care facilities, in particular, "must allow a person with a disability to be accompanied by a service animal in all areas in which that person would otherwise be allowed, the broadest feasible access be provided to service animals in all places of public accommodation including hospitals". In this case the accommodation did not fundamentally alter the nature of the facility or the service offered. The generally recognized exception is consistent with the Center for Disease Control and Prevention ("CDC") guidance which allows blanket prohibitions of service animals in limited access areas that employ general measures of infection control such as those areas subject to strict hygiene rules that require barrier protective gowns, masks and gloves such as operating rooms 28 C.F.R. 36 app. A. subpt. C. (guidelines, July 2019). The Plaintiff has thus stated a plausible claim that MONTAGE HEALTH/CHOMP did not comply with the ADA in denying Wills' the use of her service animal while being questioned at CHOMP, as stated in this Courts Order.

D. Plaintiff understands that this Court has **DENIED** the motion to dismiss Plaintiff's claims under the ADA against Defendant MONTAGE HEALTH as to the denial of the use of her service animal while she was receiving care at CHOMP.

21. VIOLATION OF THE UNRUH ACT AS TO DEFENDANT MONTAGE HEALTH

A. Plaintiff understands that this Court has **DENIED** the motion to dismiss Plaintiffs claims under the UNRUH Civil Rights Act against Defendant MONTAGE HEALTH.

22, VIOLATION OF THE REHABILITATION ACT OF 1973 §504 AS TO DEFENDANT MONTAGE HEALTH

A. Section 504 of the Rehabilitation Act provides that....."for the purposes of this section, the term "program activity" ***means all*** of the operations of...an entire corporation, partnership, or other private organization, or an entire sole proprietorship...which is principally engaged in the business of providing ......health care." 1). The Plaintiff is disabled under the Act ***as previously stated in the ADA Title III claim***; 2) Plaintiff meets the essential eligibility requirements of the program with or without reasonable accommodation ***as previously stated in the ADA Title III claim;*** 3) Plaintiff was denied the benefits because of the disability ***as previously stated in the ADA Title III claim***; and 4) ***MONTAGE HEALTH receives federal financial assistance. MONTAGE HEALTH is a non-profit which receives federal financial assistance, most recently;*** (Montage Health had $895 million of unrestricted cash and investments as of July 2021 and just over $213 million of long-term debt outstanding). ***Community Hospital of the Monterey Peninsula, Montage's hospital, received $12.9 million from the first round of the CARES Act – the highest award of any medical agency in Monterey County.*** The Ninth Circuit has established that there are no differences to substantially affect the rights under the ADA and the Rehabilitation Act. ***Plaintiffs' accommodation merely required that her service animal be by her side at all times, which is a reasonable accommodation***. MONTAGE HEALTH/CHOMP is a non-profit health care facility subject to the Rehabilitation Act. Therefore, Plaintiff asserts that MONTAGE HEALTH is a recipient of federal financial assistance. As such under the ADA guidelines, it was reasonable accommodation on the Defendants part to allow Plaintiffs service animal to accompany her during the questioning by Dr. McDaniels, Blevins, RN and Dr. Sullivan as well as all other foreseeable care which Plaintiff should have received or did receive by MONTAGE HEALTH/CHOMP. Therefore, Defendant denied Wills the use of her service animal and receives federal funding which denotes a prima face case for relief under the Rehabilitation Act.

23. NEGLIGENCE AS TO DEFENDANT MONTAGE HEALTH

A. The Plaintiff brings claims of negligence against MONTAGE HEALTH having suffered harm to property, physical and mental suffering because Defendant breached its "duty of care through act and/or culpable omission and was a reasonably foreseeable [page 27]

consequence of Defendants acts and/or omissions. The Plaintiff suffered physical and mental suffering and harm to property because MONTAGE HEALTH breached its duty of care to the Plaintiff. Defendant MONTAGE HEALTH owed a duty of care to the patients coming to CHOMP for care, MONTAGE HEALTH breached this duty, was negligent in its duty to follow Federal law relative to ADA guidelines and other laws pertaining to Plaintiffs claims and to insure that MONTAGE HEALTH employees followed Federal laws and guidelines to protect patients and prevent harm. MONTAGE HEALTH'S breach of duty caused the Plaintiffs injuries. MONTAGE HEALTHS actions and their employee actions were the proximate cause of the injuries, in other words, the Defendant should have foreseen the dangers of its actions or inactions. The Plaintiff and her service animal were substantially injured ***during*** the wrongful acts of MONTAGE HEALTHS employees; to this date the Plaintiff continues to suffer: *physically through lack of sleep, nightmares, immense mental anguish, and extreme guilt for having placed trust and faith that a hospital such as CHOMP would protect her from harm and take care of her when she came to CHOMP for medical care*. During the wrongful acts and/or omissions of MONTAGE HEALTH'S employees at the time of Plaintiffs visit, the Plaintiff and her service animal experienced acute and extreme stress, physically and mentally, and Plaintiffs service animal was in poor health from a cardiopulmonary standpoint and the actions of MONTAGE HEALTH detrimentally affected Plaintiffs service animal. In conclusion, Defendant MONTAGE HEALTH had a duty to familiarize themselves with Federal and State laws such as the Americans with Disabilities Act, the UNRUH Civil Rights Act, The Rehabilitation Act and take reasonable steps to ensure that their hospital and all their employees were informed. The ADA has been in effect for over thirty years. The Defendant breached that duty because CHOMP employees violated Federal and State laws during Plaintiffs visit, Plaintiff was asked to provide written documentation for her service animal, she was denied service because of her disability and her service animal was forcibly separated by CHOMP employees. MONTAGE HEALTH'S/CHOMPS act/acts and/or culpable omissions were the cause or causation of Plaintiffs injuries, and as stated above Plaintiff and her service animal were detrimentally injured. Plaintiff asserts this breach caused foreseeable loss including but not limited to damage to property and mental and physical injury, pain, suffering and emotional distress, to be determined by jury trial [page 28]

24. INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS AS TO DEFENDANT MONTGE HEALTH

A. Plaintiff asserts a claim for IIED as Defendants intentional or reckless conduct was extreme and outrageous and caused severe injury to her and her service animal. MONTAGE HEALTH employees knew Plaintiff was vulnerable and were in a position of power and owed a duty of care. Plaintiff asserts that **once Plaintiff informed MONTAGE HEALTH employees that they were in violation** of Federal law pertaining to **her disability that they reacted to that in a legally** defensive **and retaliatory manner and that those acts were intentional and in reckless disregard of consequential injury to the Plaintiff and her service animal. The Plaintiff specifically stated to BLEVINS, RN,** DR. SULLIVAN and DR. MCDANIELS, ***that they were in violation of federal law.*** **The Plaintiff asserts that the actions which followed those statements the Plaintiff made to the aforementioned individuals prompted the subsequent chain of events. MONTAGE HEALTH employees once informed that they could not ask for written** documentation or deny service to her they retaliated by holding Plaintiff at the hospital against her will and forcibly separated Wills from her service animal and then refused to release Wills unless she got a hotel. MONTAGE HEALTH security employee taunted Plaintiff with a grin while putting on gloves, the hospital staff solicited the assistance of the Monterey Police Department to get written documentation from the Plaintiff, which she provided because she believed that would eliminate the act of forcibly separating her from her service animal, which to Plaintiffs horror was not true at all. Plaintiff asserts that the aforementioned meets the first element of (1) extreme and outrageous conduct by the defendant with the intention of causing, or reckless disregard of the probability of causing, emotional distress.(2) The Plaintiff suffered severe and extreme emotional distress, Wills was in acute emotional distress, was in fear for her safety and the safety of her service animal, to this day Plaintiff suffers emotional distress in the aftermath of her visit to CHOMP that day and suffers extreme emotional distress for what her service animal endured while physically ill from a compromised cardiopulmonary system. (3) The Defendants conduct was the actual and proximate causation of the Plaintiffs and her service animals' emotional distress. Plaintiff asserts that she politely informed CHOMP employees that they were in violation of Federal law and the resulting consequences were: being held against her will, the forced [page 29]

separation of her from her service animal, the threats from CHOMPS' Security Officer, coercion to provide written service animal documentation. Plaintiff asserts that to merely inform a public accommodation that their actions were unauthorized and illegal under Federal law and to have these CHOMP employees then assert their power in a manner which detrimentally harmed Plaintiff and her service animal and that this meets emotional distress of such substantial and enduring quality that no reasonable person should be expected to endure it. Plaintiff has provided (1) requisite evidence" that CHOMP displayed reckless disregard for the probability of causing emotional distress by refusing to accommodate her service animal (2) that the Plaintiff suffered emotional distress both during and following her visit to CHOMP (3) and that CHOMPS' refusal to allow her to be accompanied by her service animal caused the emotional distress. The repeated refusal in C.L. v. Del Amo Hosp. Inc. proved to support the IIED claim. Here Wills is asserting that **her mere statement that CHOMP employees were violating Federal and State laws** resulted in them: ***denying service to Wills, forcibly separating Wills from her service animal, holding Wills against her will and refusing to release her unless she incurred the expense of getting a hotel.***

25. NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS AS TO DEFENDANT MONTAGE HEALTH

A. Plaintiff asserts a claim for NIED stating that MONTAGE HEALTH breached its legal duty to use reasonable care to avoid causing emotional distress to the plaintiff as such Plaintiff asserts (1) defendant MONTAGE HEALTH owed her a duty of care (2) MONTAGE HEALTH breached that duty (3)Plaintiff suffered severe and serious emotional distress as a result which MONTAGE HEALTH should have foreseen (4) Wills was injured and has recoverable damages as a result of Defendants negligence. As previously stated above MONTAGE HEALTH employees knew Plaintiff was vulnerable and were in a position of power and owed a duty of care. Plaintiff asserts that **once Plaintiff informed MONTAGE HEALTH employees that they were in violation of Federal law pertaining to her disability that they reacted to that in a legally defensive and retaliatory manner and that those acts were intentional and in reckless disregard of consequential injury to the Plaintiff and her service animal. The Plaintiff specifically stated to BLEVINS, RN, DR. SULLIVAN and DR. MCDANIELS,** ***that they were in violation of federal law.*** **The Plaintiff asserts** [page 30]

that the actions which followed those statements the Plaintiff made to the aforementioned individuals prompted the subsequent chain of events. MONTAGE HEALTH employees once informed that they could not ask for written documentation or deny service to her they retaliated by holding Plaintiff at the hospital against her will and forcibly separated Wills from her service animal and then refused to release Wills unless she got a hotel. MONTAGE HEALTH security employee taunted Plaintiff with a grin while putting on gloves, the hospital staff solicited the assistance of the Monterey Police Department to get written documentation from the Plaintiff, which she provided because she believed that would eliminate the act of forcibly separating her from her service animal, which to Plaintiffs horror was not true at all. Plaintiff asserts that the aforementioned meets the first element of (1) MONTAGE HEALTH owed her a duty of care.(2) MONTAGE HEALTH breached that duty. (3) Plaintiff suffered severe emotional distress as a result. Plaintiff asserts that she politely informed CHOMP employees that they were in violation of Federal law and the resulting consequences were: being held against her will, the forced separation of her from her service animal, the threats from CHOMPS' Security Officer, coercion to provide written service animal documentation. Plaintiff asserts that to merely inform a public accommodation that their actions were unauthorized and illegal under Federal law and to have these CHOMP employees then assert their power in a manner which detrimentally harmed Plaintiff and her service animal and that this meets emotional distress of such substantial and enduring quality that no reasonable person should be expected to endure it. Plaintiff has provided (1) requisite evidence" that CHOMP displayed reckless disregard for the probability of causing emotional distress by refusing to accommodate her service animal (2) that the Plaintiff suffered emotional distress both during and following her visit to CHOMP (3) and that CHOMPS' refusal to allow her to be accompanied by her service animal caused the emotional distress. The repeated refusal in C.L. v. Del Amo Hosp. supported an *"IIED" v. NEID claim.* Here Wills is asserting that her mere **statement that** CHOMP employees were **violating** Federal **and State laws** resulted in them: ***denying service to Wills, forcibly separating Wills' from her service animal, holding Wills against her will and refusing to release her unless she incurred the expense of getting a hotel.*** The *forced separation* from her service animal created such *"severe emotional distress for Wills and her service animal that physical symptoms resulted.* "

[page 31]

PLAINTIFF'S AMENDED COMPLAINT: VIOLATION EIGHTH AND FOURTEENTH AMENDMENTS 42 USC §1983; TITLE III ADA 42 USC; UNRUH CIVIL RIGHTS ACT § 51; THE REHABILITATION ACT 1973 § 504 29 USC §701; NEGLIGENCE; INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS; NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS; COMPENSATORY AND PUNITIVE/EXEMPLARY DAMAGES…

*Both Wills and her service animal were so distressed emotionally about the separation that the Plaintiff could see that her service animal was showing signs of acute stress through physical symptoms such as rapid breathing, panting, and Wills was experiencing acute stress physically such as rapid breathing, sweating, nausea, increase in blood pressure. The aforementioned physical symptoms do not include "all" the physical consequences of the event for Wills and her service animal. The Plaintiff physically felt as though she was going to physically collapse and was concerned about the frail condition of her service animal.*

26. VIOLATION OF THE EIGTH AMENDMENT AS TO DEFENDANT THE CITY

A. Plaintiff asserts that Defendants City of Monterey, Monterey Police Department and Harbor Patrol violated the Eighth Amendment's cruel and unusual punishment clause by enforcing anti-homeless city ordinances, which Plaintiff had no way to comply with and *yet the aforementioned Defendants routinely cited, threatened and harassed her for sleeping in public.* The Eighth Amendment 1) limits the kinds of punishments that can be imposed upon those convicted of crimes 2) it proscribes punishments that are grossly disproportionate to the severity of the crime and 3) it imposes substantive limits on what can be made criminal and punished as such. "***Law is system of rules created and enforced through social or governmental institutions to "regulate behavior",*** Plaintiff asserts a Civil Rights Claim against Defendants CITY OF MONTEREY alleging that the City's "anti-camping" Ordinances violated the Eighth Amendments' Cruel and Unusual Punishments clause and seeks damages for the alleged violations under 42 U.S.C. §1983. *In Martin v. Boise* the ***United States Court of Appeals for the Ninth Circuit*** has held that a city is barred from prosecuting people criminally for sleeping outside on public property when those people have no home or other shelter to go to. This ruling has been upheld by the ***Supreme Court of the United States in City of Boise v. Martin***. In 2015 the ***United States Department of Justice Civil Rights Division*** filed a Statement of Interest of the U.S. in the *Martin v. Boise* case in which they urged the Court to follow *Jones v. City of Los Angeles*, which held that enforcement of anti-camping ordinances violate the Eighth Amendment where there is inadequate shelter space available for all of a city's homeless individuals. The United States has the authority and permits the Attorney General to attend to the interests of the United States in any case pending in a federal court. ***The Ninth Circuit, the Supreme Court and the U.S. Dept. of Justice have ruled on this matter.*** [page 32]

PLAINTIFF'S AMENDED COMPLAINT: VIOLATION EIGHTH AND FOURTEENTH AMENDMENTS 42 USC §1983; TITLE III ADA 42 USC; UNRUH CIVIL RIGHTS ACT § 51; THE REHABILITATION ACT 1973 § 504 29 USC §701; NEGLIGENCE; INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS; NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS; COMPENSATORY AND PUNITIVE/EXEMPLARY DAMAGES…

*The United States enforces the rights of individuals to be free from unconstitutional and abusive "policing." ".....Sleeping is a conduct essential to human life and wholly innocent....." (U.S. Department of Justice, 08/06/2015.) In Martin v. Boise "he or she was cited by Boise police for violating one or both of two city ordinances. The first Boise City Code §9-10-02 (the "Camping Ordinance"), makes it a misdemeanor to use "any of the streets, sidewalks, parks, or public places as a camping place at any time." "The Camping Ordinance defines "camping" as "the use of public property as a temporary or permanent place of dwelling, lodging or residence." "The second, Boise City Code §6-01-05 (the "Disorderly Conduct Ordinance"), bans "[o]ccupying, lodging, or sleeping in any building, structure, or public place, whether public or private....without the permission of the owner or person entitled to possession or in control thereof."*

Plaintiffs Complaint Page 27

"Monterey Municipal Code Ordinance 3281 § 20-85 (06/2000) criminally punishes the occupation of any camper, trailer or other vehicle equipped for human habitation, the erection of any tent or other shelter, the arrangement of sleeping bags or bedding for the purpose of, or which will permit, remaining overnight the hours between 10:00 p.m. of one day and 6:00 A.m. of the following day." "Section 23-3 states it shall be unlawful for any person to camp except in designated areas, enter or remain on the premises after established closing hours. It shall be unlawful for any person to enter or remain on the premises or any City park outside of posted open hours." "The City has changed the language of the ordinances in the past." The terms of this ordinance is broad such that it covers sleeping or resting in any public place and police officers have cited individuals for violation throughout the City.

Court's Order 09/13/2021 Page 17

One is Monterey City Code Section 20-85, which reads:

"No person shall use or occupy, or permit the use or occupancy of, any motor vehicle, recreational vehicle, camp trailer, camper, trailer coach or similar vehicles for purposes of sleeping camping or habitation on any street or upon any public property, including any public parking lot, or upon any private parking lot, between the hours of 10:00p.m. and 6:00 a.m. except in areas designated for camping by the City of as otherwise permitted by this City Code."                                                                                     [page 33]

PLAINTIFF'S AMENDED COMPLAINT: VIOLATION EIGHTH AND FOURTEENTH AMENDMENTS 42 USC §1983; TITLE III ADA 42 USC; UNRUH CIVIL RIGHTS ACT § 51; THE REHABILITATION ACT 1973 § 504 29 USC §701; NEGLIGENCE; INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS; NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS; COMPENSATORY AND PUNITIVE/EXEMPLARY DAMAGES...

*See* Monterey City Code § 20-85. The other is Monterey City Code Section 23-3, which reads:

"It shall be unlawful for any person to : (a) Camp, except in designated areas, (b) Camp without first obtaining a permit. At Veteran's Memorial Park, paying a fee and filing out the required card constitutes a permit, (c) Enter or remain on the premises after the established closing hours, (d) Picnic, except in designated areas, (e) Operate or park a vehicle in other than designated areas or over established roads, (f) Burn, kindle, light or maintain any fire during the hours of 10:00 p.m. to 6:00 a.m. or to burn, kindle light, or maintain a fire during permitted hours which is not fully contained within a portable barbecue; or, to dispose of any charcoals, coals, embers, or other residue from a barbeque in any beach area except in a City-provided fireplace or fire ring...(j) Park or allow any vehicle to remain in excess if eight consecutive hours, except in conjunction with a valid camping permit....." ***Plaintiff asserts the above is law pertaining to Monterey's Veterans Memorial Park . It is a "CAMPGROUND."***

B. On May 05, 2021, Defendant City of Monterey submitted a Request for Judicial Notice of the following three Monterey City Code sections; Section 20-85; Section 23-2; and Section 23-3. ***The Plaintiff "still questions" that these documents can be accurately and readily determined. Plaintiff "still questions" the sources accuracy and reasonably questions their authenticity. The Plaintiff "disputes" their authenticity.***

C. *In Martin v. Boise, Ninth Circuit, 2018,* "To establish Article III standing, an injury must be concrete, particularized, and actual or imminent; fairly traceable to the challenged action; and redressable by a favorable ruling." Although imminence is concededly a somewhat elastic concept, it cannot be stretched beyond its purpose, which is to ensure that the alleged injury is not too speculative for Article III purposes – that the injury is *certainly* impending." "A plaintiff need not, however, await an arrest or prosecution to have standing to challenge the constitutionality of a criminal statute." Here Wills has alleged "intention to engage in a course of conduct arguably affected with a constitutional interest, but proscribed by a statute, and there exists a credible threat of prosecution thereunder, he should not be required to await and undergo a criminal prosecution as the sole means of seeking relief."

[page 34]

PLAINTIFF'S AMENDED COMPLAINT: VIOLATION EIGHTH AND FOURTEENTH AMENDMENTS 42 USC §1983; TITLE III ADA 42 USC; UNRUH CIVIL RIGHTS ACT § 51; THE REHABILITATION ACT 1973 § 504 29 USC §701; NEGLIGENCE; INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS; NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS; COMPENSATORY AND PUNITIVE/EXEMPLARY DAMAGES...

"As the Supreme Court observed in Ingraham, the Cruel and Unusual Punishments Clause "imposes substantive limits on what can be made criminal and punished as such", *Id. At 667.* "... a plaintiff need ***demonstrate the initiation of the criminal process*** against him, not a conviction." Plaintiff establishes Article III standing: (1) an injury in fact that: ***Wills was stopped, questioned, harassed, threatened with arrest, given a written eviction notice, awoken while she was sleeping, ordered not to set up belongings to sleep, detained, forced to move, forced to stay awake, forced to sleep in unsafe areas, threatened to be thrown in jail, forced to sleep abnormal hours, forced to go without sleep. by the Monterey Police Department, Plaintiff was sleep deprived, was in fear for her life, was in fear of being arrested, was in fear of having a criminal record, Plaintiff was ordered by the Monterey Police Department "NOT TO SLEEP". Plaintiff was exhausted, humiliated, fearful, and continuously worried about her ability to legally get sleep on a daily basis.*** (2) is fairly traceable to the challenged conduct and: ***the Plaintiffs aforementioned injuries are very traceable to the City of Monterey's anti-camping ordinances and laws which were enforced by the City of Monterey's Police Department, and Monterey Harbor Patrol.*** (3) the Court has the authority or the jurisdiction to remedy the anti-camping ordinances of the City of Monterey by compensating or reparation for an unfairness, injustice, or imbalance to the Plaintiff. Plaintiffs' injury is very traceable to the challenged conduct as opposed to a mere speculative theory. **A favorable court decision will redress the injury.** Plaintiffs' injury was concrete, she was threatened, cited with an eviction notice, harassed, sleep deprived and threatened with arrest and citation, the injury is traceable to the city 's anti-camping ordinances and the MPD and Harbor Patrol were authorized by the city to harass, threaten and cite individuals in violation of the ordinances. ***The Plaintiff has established standing to challenge enforcement of a law, the Plaintiff must allege she faces a credible threat of enforcement. The Plaintiff had the right to believe that the threats of arrest would be followed through by the Monterey Police Department. The Plaintiff rightly has demonstrated that the continuous threats by the Monterey Police Department would result in direct injury of arrest, citation as a result of the City of Monterey's anti-camping ordinances. MPD stated they would arrest her – repeatedly! The City of Monterey and the Monterey Police Department has cited and arrested homeless individuals for violation of anti-camping ordinances many times.***

*Plaintiff has stated in her original complaint dated March 19, 2021 and herein Plaintiffs First Amended Complaint specific incidents of Monterey Police Department harassing her and threatening her with arrest on "multiple" occasions: A.-Q. "Therefore, there is no requirement that the risk of future injury satisfy any particular threshold of significance." The Plaintiff asserts that the "making of the anti-camping ordinances was the initial step in the criminal process, the threats of citations and the continual harassment and threats of arrest were the second step, the Plaintiff had the right to conclude that her behavior of sleeping in public a violation of the anti-camping ordinances of the City of Monterey were going to result in arrest and time in jail, after all that is what Police Officers of the City of Monterey kept telling the Plaintiff and the Plaintiff kept trying to avoid the citations and the arrest and time in jail. The City of Monterey criminalized the status of being homeless and the behavior of sleeping in public places in the City of Monterey. The initiation of the criminal process is the making of the law, the City of Monterey chose specifically to threaten citation and arrest to deter the behavior, after all Martin v. Boise had already impacted the Civil Rights violations in a Federal Court. THE PLAINTIFF HAD THE RIGHT TO BELIEVE WHAT SHE WAS BEING TOLD BY MONTEREY POLICE, IT WAS AGAINST CITY LAW TO CAMP AND SLEEP IN PUBLIC AND THE POLICE OFFICERS OF MONTEREY THREATENED THE PLAINTIFF WITH CITATION AND ARREST ON MULTIPLE OCCASIONS, SPECIFICALLY TOO MANY TIMES TO COUNT. IN ADDITION THE STATEMENT BY MONTEREY CITY THAT CAMPING WAS LEGAL IN CERTAIN AREAS, THE PLAINTIFF FINDS OFFENSIVE TO STATE TO A FEDERAAL COURT, AFTERALL THE LEGAL CAMPING AREAS THE CITY ATTORNEYS OFFICE IS TALKING ABOUT IS "SPECIFICALLY A CAMPGROUND FOR TOURISTS WHOM PAY $40 PER NIGHT TO CAMP THERE, THAT'S APPROX. $1200.00 PER MONTH TO LIVE IN A TENT. The Plaintiff reiterates MPD repeatedly harassed her, threatened her with citations for illegally camping numerous times and Plaintiff was forced to keep moving.*

27. EIGHTH AMENDMENT

A. "the Eighth Amendment prohibits the imposition of criminal penalties for sitting, sleeping, or lying outside on public property for homeless individuals who [page 36]

cannot obtain shelter." *Martin v. Boise, 920 F3d. at 615.* The Plaintiff asserts that enforcement of the City codes cited left her no alternative locations to stay without obtaining a permit. Monterey City Code Section 23-3 is for Veterans Memorial Park. It is a campground for the *"tourism based industry" the camping fees are approximately $40.00 per night, which is $1200.00 to live in a tent, which Plaintiff could not pay because the Plaintiff had exhausted her funds on "hotels" because there was a housing shortage". In addition a homeless person if they could afford $1200.00 per month could not stay at Veterans Memorial Park for an extended time or even unlikely two weeks in a row.* The other City Code 20-85 makes it illegal to camp except in designated areas. The City did not have any areas designated for "illegal camping" because it was illegal. The Plaintiffs complaint page 27 states Monterey City Code Ordinance § 3281 20-85 (06/2000) criminally punishes the occupation of any camper, trailer, or other vehicle equipped for human habitation, the erection of any tent or other shelter, the arrangement of sleeping bags or bedding for the purposes of, or which will permit, remaining overnight the hours between 10:00 p.m. or one day and 6:00a.m. of the following day. Section 23-3 states it shall be unlawful for any person to camp except in designated areas, enter or remain on the premises after established closing hours. It shall be unlawful for any person to enter or remain on the premises of any city park outside of posted open hours. The Plaintiff copied this wording off the Monterey City website before filing this Civil Action. The Plaintiff has strenuously objected to Monterey City's request for Judicial Notice because the wording has changed since the Plaintiff filed this Civil Action and the Plaintiff is legally entitled to have the Court and Jury hear the wording of the Ordinances before the City changed the wording.

[page 37]

PLAINTIFF'S AMENDED COMPLAINT: VIOLATION EIGHTH AND FOURTEENTH AMENDMENTS 42 USC §1983; TITLE III ADA 42 USC; UNRUH CIVIL RIGHTS ACT § 51; THE REHABILITATION ACT 1973 § 504 29 USC §701; NEGLIGENCE; INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS; NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS; COMPENSATORY AND PUNITIVE/EXEMPLARY DAMAGES…

The aforementioned Ordinances made it impossible for the Plaintiff to sleep in any area legally. Literally, the Ordinances precluded the Plaintiff for arranging bedding of any kind.There were no designated areas to camp without a permit and to pay $40.00 per night.The City has an unwritten policy to ***HARASS HOMELESS INDIVIDUALS TO DRIVE THEM OUT OF THE CITY.*** The Ordinances caused Plaintiffs injury by precluding her camping other than to stay in a religiously pervasive facility.

28. FIRST AMENDMENT

A. Plaintiff asserts that the only available shelter in City of Monterey was for youth ages 18-21 and I-HELP an Interfaith - Emergency Lodging Program, in which participants were allowed to sleep inside various and rotating churches on the Monterey Peninsula on a mat on the floor. This was a pervasively religious program. The food gatherings in the City of Monterey were run by religious based facilities and it was common practice for the volunteers to pray and participants were required to stand there and listen to the prayers before being allowed to eat. Food was not served until prayers were cited period. The City of Monterey did threaten prosecution of the anti-camping ordinances, and Monterey Police Department routinely offered, advised the use of the I-HELP program, in violation of the Establishment Clause of the First Amendment. Plaintiffs only option was to risk citation for sleeping in public areas within the City of Monterey ***or*** use the I-HELP program. There were no other options in the City of Monterey. In addition, the I-HELP program was always full and people were turned away because there was not enough space. The I-HELP program had a program for men and women. Therefore, as a practical matter when the shelters were full, no shelter was available and Plaintiff ran a credible risk of receiving a citation. So, Plaintiff asserts with particularity that the only shelters in the City of Monterey were 1) Safe Passage for youth, young men and women between the ages of 18-21, and I-HELP an Interfaith – Emergency Lodging Program, which was a religiously pervasive program for men and women and individuals were frequently turned away because there was not enough floor space for all the attendees on the church floors. There was a mentally ill and drug rehabilitation program. Plaintiff was not mentally ill or drug addicted and shelter was not included.

29. VIOLATION OF THE EQUAL PROTECTION CLAUSE AS TO DEFENDANT THE CITY

A. Plaintiff asserts the City violated the Equal Protection Clause U.S. Constitution Amendment XIV, denying her right to travel permitting Plaintiff to move from one place to another as she pleased. Plaintiff traveled in and out of the state of California, up to Oregon and Washington to find relief from the housing shortage and affordability crisis. Wills traveled to and from Monterey several times. The City of Monterey acted with intent and purpose with their anti-camping ordinances to prevent homeless individuals from coming into their city and from staying in their City. This intent or purpose directly and intentionally discriminated against the Plaintiff because she could not find housing outside of the pricy hotels affiliated with Monterey's tourism based economy. The purpose and intent of the anti-camping laws were solely to keep homeless and poverty stricken individuals out of City limits. The legitimate end to the City Ordinances was specifically to rid the City of a particular class of individuals – homeless individuals. This is a long-standing tactic that cities and towns have utilized to impose penalties on those passing through such as casual workers, day laborers, poor people, in an attempt to keep them moving and out of their city. Both the Third and Sixth Circuits have recognized the "right to travel locally and through public spaces and roadways as the constitutional right to freedom of movement". Monterey City Ordinances made it impossible for Plaintiff to travel or to reside in Monterey. Plaintiff had no other option but to sleep in outdoor public spaces. Enforcement of these Ordinances served the purpose and has the effect of driving homeless people out of the City or deterring them from entering the city in the first place. The City's implementation of the ordinances is not supported by a *"permissible and compelling state interest." "The Defendants have impermissibly burdened the fundamental right of homeless individuals to interstate and intrastate travel in violation of the substantive Equal Protection Clause of the Fourteenth Amendment of the United States Constitution and Plaintiff seeks redress for Defendants violation of their right to travel. " Martin v. Boise.* Therefore, Plaintiff asserts that Monterey City Codes bear a rational relation to a legitimate end.

30. DUE PROCESS

A. Plaintiff asserts a substantive due process claim against Defendant City [page 39]

A. Monterey City Ordinances as aforementioned 20-85 and 23-3 "fail to define the camping offense clearly, so that ordinary people can understand the prohibited conduct." [Monterey Police Officers] "…..Boise police officers have issued citations for a wide range of activity including that which falls outside of a "commonsense" understanding of camping, such as for sitting by a riverbank or for sleeping outside with only a bedroll." *Martin v. Boise.* Monterey City Police Officers have subjected numerous individuals to anti-camping citations in violation of Due Process laws. The Monterey City Ordinances are unconstitutionally vague in violation of the United States Constitution Fourteenth Amendment. Plaintiff asserts a Violation of Due Process – Overbreadth, whereby the Monterey City's anti-camping Ordinances "penalize involuntary, harmless and inoffensive conduct in public places…" City of Monterey's "…..citation and arrest of Plaintiffs for sleeping or resting in parks or on public streets when those individuals have nowhere to seek lawful shelter interferes with Plaintiff's constitutional rights under the Eighth and Fourteenth Amendments to be free from cruel and unusual punishment and to travel." *Martin v. Boise.* Plaintiff alleges a substantive due process claim whereby; the City of Monterey affirmatively placed Plaintiff in danger by acting with "deliberate indifference to a known or obvious danger in subjecting the Plaintiff to it". Monterey City Police Officers placed the Plaintiff in a position of danger when they threatened her with citation for illegal camping, forcing Plaintiff to hide from the visibility of other people which subjected her to the threats of other homeless individuals whom were drug addicted, mentally ill or retaliatory for the Civil Harassment Protection Order as described herein above which Plaintiff received from a Superior Court judge to protect her from harassment and the attempt to burn her in her tent while she slept. Plaintiff asserts that Monterey City Police Officers can be held liable for the injury, death or harassment. The Plaintiff states with particularity that the Monterey City Police Department refused to enforce the "Civil Harassment (with violence) Restraining Order" which was granted for two years beginning 04/30/19. Plaintiff in the factual background A through Q has stated with specific details that the man whom the restraining order was served upon violated the order numerous times and the Monterey Police Department refused to do anything about it. ***Plaintiff hand delivered approximately half a dozen complaints to Chief Hober and Wills never heard from him regarding her concerns.***

Plaintiff was therefore put in a grave and dangerous situation because, the Defendant's enforcement of the anti-camping laws forced her to hide from plain view and therefore put her in a more dangerous situation because she could have been attacked, injured or worse because of the ordinances.

31. MS. WILLS' STATE LAW CLAIMS AGAINST DEFENDANT THE CITY.

A. Plaintiff alleges the Defendant the City is guilty of torts of negligence, intentional infliction of emotional distress, negligent infliction of emotional distress and seeks monetary damages as a result. As stated in Plaintiffs Opposition, that in regard to Plaintiffs Civil Rights Claims the "state immunities and claims-presentation requirements are inapplicable." Generally, governmental tort immunities recognized by state law cannot override liabilities created by the federal Civil Rights Act. Similarly, state claims presentation requirements do not apply to federal civil rights actions. In response to the Plaintiffs State Law Claims against Defendant the City. "The Plaintiff eventually contacted the Attorney for the City of Monterey Plaintiff told her she would be filing a Civil Action against the City of Monterey, the Police Department and Harbor Patrol." "Plaintiff warned that any further harassment and intimidation would be carefully noted and that it would be remedied in her civil action and advised her to address Plaintiff's concerns now." The Plaintiff after her telephone conversation with the City of Monterey Attorney's Office *sent written claims* by mail against the city and her intent to bring Civil Action, Plaintiff never heard from the City of Monterey. As such Plaintiff was not required to comply with the Government Claims Act in reference to her Civil Rights claims as generally governmental tort immunities recognized by state law cannot override liabilities created by the federal Civil Rights Act. Similarly, state claims presentation requirements do not apply to federal civil rights actions. Sixth (IIED) and Seventh (NEID) causes of action should not be dismissed as to the City because the Plaintiff has sufficiently stated relevant claims for relief. Thus prior to bringing this Civil Action Plaintiff filed a claim meeting the requirements of the California Tort Claims Act (Government Code §§ 810-996.6). This law applies to public entities such as state, county, and local government agencies or departments, as well as to government employees. Plaintiff filed a written claim within the legally specified time period. The agency failed to take action and therefore the claim was denied and Plaintiff had the right to sue [page 41]

PLAINTIFF'S AMENDED COMPLAINT: VIOLATION EIGHTH AND FOURTEENTH AMENDMENTS 42 USC §1983; TITLE III ADA 42 USC; UNRUH CIVIL RIGHTS ACT § 51; THE REHABILITATION ACT 1973 § 504 29 USC §701; NEGLIGENCE; INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS; NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS; COMPENSATORY AND PUNITIVE/EXEMPLARY DAMAGES…

since the agency did not provide any written notice rejecting Plaintiffs claim, Wills had two years from the date of injury or damage with which to comply and she did. **CHAPTER 945.6.** a) Except as provided in Sections 946.4 and 946.6 and subject to subdivision (b), any suit brought against a public entity on a cause of action for which a claim is required to be presented in accordance with Chapter 1 (commencing with Section 900) and Chapter 2 (commencing with Section 910) of Part 3 of this division must be commenced:(1) If written notice is given in accordance with Section 913, not later than six months after the date such notice is personally delivered or deposited in the mail.(2) If written notice is not given in accordance with Section 913, within two years from the accrual of the cause of action. If the period within which the public entity is required to act is extended pursuant to subdivision (b) of Section 912.4, the period of such extension is not part of the time limited for the commencement of the action under this paragraph. Therefore, Plaintiff provided written claim as required. The Court in its Order dated September 13, 2021; states "with leave to amend to allege whether and how she complied with the Government Claims Act." The Order has not requested that the Plaintiff further amend her state law claims and so the Plaintiff does not do so in this Amended Complaint because the Court has not specified that she is to do so: ***"The Court GRANTS the motion to dismiss Ms. Wills' claims for negligence, intentional infliction of emotional distress, and negligent infliction of emotional distress against Defendant the City with leave to amend to allege whether and how she complied with the Government Claims Act."***

***PRAYER FOR RELIEF WHEREFORE,*** based upon the allegations asserted herein, Plaintiff respectfully requests the Court to declare that Defendants violated Plaintiffs rights under the: Eighth and Fourteenth Amendment 42 U.S.C. §1983, Title III ADA 42 U.S.C., UNRUH Civil Rights Act §51, The Rehabilitation Act 1973 § 504 and find that Defendants (all) acted with Negligence and the intent to cause the Intentional Infliction of Emotional Distress or Negligent Infliction of Emotional Distress and the award of Compensatory and Punitive or Exemplary Damages in an amount to be determined at trial and reasonable fees and costs pursuant to 28 U.S.C. § 1920, 42 U.S.C.§ 1988, as well as California State law provisions and ***All other such relief as this Court deems just and proper.*** [page 42]

PLAINTIFF'S AMENDED COMPLAINT: VIOLATION EIGHTH AND FOURTEENTH AMENDMENTS 42 USC §1983; TITLE III ADA 42 USC; UNRUH CIVIL RIGHTS ACT § 51; THE REHABILITATION ACT 1973 § 504 29 USC §701; NEGLIGENCE; INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS; NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS; COMPENSATORY AND PUNITIVE/EXEMPLARY DAMAGES…

*JURY DEMAND* Pursuant to Rule 38 of the Federal Rules of Civil Procedure, Plaintiff hereby requests a jury trial. Respectfully submitted this 27th day of December, 2021

______________________________, December 27, 2021

Cynthia S. Wills
PO Box 7113
Carmel-By-The-Sea, CA 93921
831-233-0727
Plaintiff Pro Se

CERTIFICATE OF SERVICE

This is to certify that I have this day December 27, 2021 filed with the Clerk for the United States District Court, Northern District of California, San Francisco Division, 450 Golden Gate Avenue, 16th Floor, San Francisco, CA 94102, (ph: 415-522-2000). (__✓__Placed in U.S. Mail). (______Hand Delivered).

Sheuerman, Martini, Tabari, Zenere & Garvin. A Professional Corporation, Cyrus A. Tabari, 1033 Willow Street, San Jose, CA 95125. (Ph:408-288-9700). (__✓__Placed in U.S. Mail). (_____Hand Delivered).

Law Offices of William R. Price. 12636 High Bluff Drive, Suite 400 San Diego, CA 92130. (Ph:858-888-0588). (__✓__Placed in U.S. Mail). (_____Hand Delivered).

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

Signed: December 27, 2021

______________________________

Cynthia S. Wills
PO Box 7113
Carmel-By-The-Sea, CA 93921
831-233-0727
Pro Se Litigant

[page 43]

PLAINTIFF'S AMENDED COMPLAINT: VIOLATION EIGHTH AND FOURTEENTH AMENDMENTS 42 USC §1983; TITLE III ADA 42 USC; UNRUH CIVIL RIGHTS ACT § 51; THE REHABILITATION ACT 1973 § 504 29 USC §701; NEGLIGENCE; INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS; NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS; COMPENSATORY AND PUNITIVE/EXEMPLARY DAMAGES…