UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CYNTHIA S WILLS,<br><br>    Plaintiff,<br><br>    v.<br><br>CITY OF MONTEREY, et al.,<br><br>    Defendants. | Case No. 21-cv-01998-EMC   (LJC)<br><br>**ORDER REGARDING MONTAGE HEALTH'S DISCOVERY LETTER BRIEF**<br><br>Re: Dkt. No. 132 |

## I. INTRODUCTION

This case has been referred to the undersigned magistrate judge for resolution of discovery disputes. *See* ECF Nos. 134, 141.[1] Defendant Montage Health submitted a Discovery Letter on January 22, 2024, seeking to compel discovery from pro se Plaintiff Cynthia Wills, and asserting that Wills refused to meet and confer or participate in drafting a joint letter. ECF No. 132. Wills responded by letter dated January 31, 2024, and filed February 2, 2024. ECF No. 137. Montage Health filed an additional letter—effectively a reply brief—on February 6, 2024. ECF No. 138.

Although a motion to continue trial is pending, the current case schedule calls for the close of fact discovery on March 28, 2024. ECF No. 119. Pending any order to the contrary by the presiding district judge, this Court therefore proceeds on the assumption that the schedule will remain in place and that discovery must be completed quickly to meet that deadline.

For the reasons discussed below, Montage Health's requests to compel discovery are GRANTED in large part. The Court also imposes restrictions on disclosure of Wills's medical information that Defendants obtain through discovery, seals Montage Health's Discovery Letter,

---

[1] Judge Chen referred the case to a randomly selected magistrate judge on January 26, 2024. ECF No. 134. The referral was assigned to Judge Kim, who recused on January 30, 2024. ECF No. 136. The case was referred to the undersigned on February 16, 2024.

1    and orders Montage Health to file a redacted version of that letter.

2    Defendant the City of Monterey (the City) filed a separate Discovery Letter on February 27, 2024, also seeking responses from Wills and also asserting that she refused to meet and confer or participate in drafting a joint letter. ECF No. 143. The Court will address that Discovery Letter at the hearing set for March 12, 2024. Going forward, all issues related to discovery in this case are governed by the Standing Order for Magistrate Judge Lisa J. Cisneros (available at https://www.cand.uscourts.gov/ljc/), and any future disputes must be raised in accordance with section F.5 of that Standing Order, as modified by this Order to allow for telephonic conferences between the parties.

## II.   BACKGROUND

A detailed recitation of the history of this case is not necessary to the outcome of the present discovery dispute. In brief, Wills asserts that Montage Health violated the Americans with Disabilities Act (ADA) and related rights under state and federal law by separating her from her service dog while she received emergency treatment at the Community Hospital of the Monterey Peninsula (CHOMP), and by demanding documentation related to her service dog. *See* ECF No. 75 (2d Am. Compl.) at 20–32.[2] According to Montage Health, Wills has stated in an interrogatory response that her disability discrimination claim is based on a stroke and vision impairment. *See* ECF No. 132 at 2. Wills asserted a variety of claims against the City and two of its departments, but Judge Chen dismissed most of those claims, allowing Wills to proceed against the City only on a claim that the City effectively criminalizes homelessness in violation of the Eighth Amendment to the U.S. Constitution. ECF No. 94 (Order Granting in Part and Denying in Part City of Monterey's Motion to Dismiss) at 7–14 (declining to dismiss Wills's Eighth Amendment claim); *id.* at 14–23 (dismissing other claims).[3]

Montage Health's Discovery Letter seeks further responses to four interrogatories (one of which in turn relates to five requests for admission) and three requests for production of

---

[2] Citations in this Order to previous filings in this case refer to page numbers as assigned by the Court's ECF filing system.
[3] Judge Chen granted Wills leave to amend to pursue a claim under the Fourteenth Amendment, but Wills did not file a third amended complaint. *See* ECF No. 94 at 24

documents. *See generally* ECF No. 132. Although Judge Chen's Standing Order requires parties raising discovery disputes to meet and confer and submit a joint letter, Montage Health asserts that Wills refused to confer except in writing, and that she failed to respond to requests to meet and confer or to a draft of Montage Health's letter brief. ECF No. 132 at 1–2.

Wills argues in response that Judge Chen instructed the parties to communicate only by mail. ECF No. 137 at 1. She states that defense counsel failed to comply with that instruction as to certain filings, but does not dispute that she received Montage Health's Discovery Letter or the discovery requests at issue. *Id.* She also states that she repeatedly attempted to contact Montage Health's counsel and left multiple voicemails. *Id.* As to the merits of the discovery dispute at issue, Wills asserts only that her "discovery answers were complete, non-evasive and appropriately objected to," that she "appropriately objected to the production of responsive documents," and that she "answered requests for admissions." *Id.*

In a response to Wills's letter, Montage Health asserts that it properly served "all correspondence related to this discovery dispute," and that Wills does not claim otherwise. ECF No. 138. Montage Health's attorneys state that they did not receive any discernable voicemail messages from Wills, although the firm received multiple messages from an unidentified caller in which no words were spoken. *Id.*

## III. ANALYSIS

### A. Scope of Discovery

The Federal Rules of Civil Procedure allow for broad discovery, and vest district courts with substantial discretion to cabin discovery based on the circumstances of a case:

> Unless otherwise limited by court order, the scope of discovery is as follows: Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit. Information within this scope of discovery need not be admissible in evidence to be discoverable.

Fed. R. Civ. P. 26(b)(1). More specific rules of discovery are discussed where relevant below.

**B.     Obligation to Meet and Confer**

Judge Chen's Civil Standing Order on Discovery, which governed discovery matters in this case before the referral of such issues to the undersigned magistrate judge, requires parties to meet and confer either in person or (where good cause warrants) by telephone before bringing a discovery dispute to the Court.  Civil Standing Order On Discovery, U.S. District Judge Edward M. Chen, § 4(a).

Wills appears to rely on the minutes of an October 3, 2023 case management conference before Judge Chen to argue that the parties should only confer in writing regarding this case, because Judge Chen "'ordered parties to communicate and file via regular mail.'"  ECF No. 137 at 1 (quoting ECF No. 118).  The relevant paragraph of the minutes reads as follows:

> Parties discussed means of communications between them. Plaintiff asserts she cannot efile and has no access to email or texts. Court ordered parties to communicate and file via regular mail, and mailbox rule pursuant to applicable FRCP and Local Rules will apply. Defendants should follow up each mail communication with a phone call to Plaintiff to confirm matter was sent by mail. Court ordered the parties to communicate via phone in real time to e.g. prepare joint CMC statements.

ECF No. 118.

Since the order regarding mail communication immediately follows discussion of Wills's inability to file electronically or access email or text messages, this Court understands that order only as requiring that any *written* communication must be by mail, not as precluding telephone or in-person discussions where appropriate.  Judge Chen specifically ordered the parties to communicate by telephone in appropriate circumstances, including but not limited to preparing case management statements.  Wills is therefore incorrect that the parties were required to confer only by mail for the purpose of raising this discovery dispute.

Going forward, the parties must comply with section F.5 of the Standing Order for Magistrate Judge Lisa J. Cisneros to raise any future discovery dispute.  In light of Wills's limited access to computers, that section is hereby modified for the purpose of this case to allow telephonic conferences as an alternative to in-person meetings or videoconferences.  The parties are ORDERED to confer by telephone or in person before raising future discovery disputes.

4

**C.     Privilege and Privacy**

Wills asserts objections based on physician-patient privilege and medical privacy to several of the discovery requests at issue. *See generally* ECF No. 132-1. The Court addresses those issues before turning to the specific discovery requests.

Federal common law applies to privilege issues in civil cases arising under federal law, including in cases with overlapping federal claims and state claims falling within a court's supplemental jurisdiction. *Wilcox v. Arpaio*, 753 F.3d 872, 876 (9th Cir. 2014); Fed. R. Evid. 501. In this case, where Wills asserts federal claims under the Americans with Disabilities Act and the U.S. Constitution, her "medical information regarding physical health care is not shielded from discovery by any physician-patient privilege, as none exists under federal law." *Bashinski v. United States*, No. 23-cv-01026-JO-JLB, 2024 WL 239102, at *4 (S.D. Cal. Jan. 22, 2024) (citing *Jaffee v. Redmond*, 518 U.S. 1, 9–10 (1996)).

That said, the Court recognizes that Wills has a significant privacy interest in her medical history. Although treatment related to Wills's disability is sufficiently relevant to the case to allow discovery and disclosure to Defendants, that does not necessarily mean that Defendants should be free to disclose Wills's medical history publicly. Under different circumstances, the Court would instruct the parties to meet and confer regarding a stipulated protective order regulating such disclosure. Here, in light of the parties' apparent difficulty meeting and conferring regarding discovery issues and the limited time remaining for fact discovery, the Court instead ORDERS as follows:

(1) Defendants shall not disclose to any third party any details of Wills's medical treatment or medical conditions that Defendants learn through discovery, unless (a) Wills has affirmatively consented to such disclosure, (b) Wills has previously publicly disclosed the same information, or (c) the Court has previously ordered the same information filed in the public record of this case;

(2) If Defendants intend to file any information in this case that would be prohibited from public disclosure under the previous clause, Defendants must file an administrative motion under Civil Local Rule 79-5(f) to consider whether that information should be

sealed, and Wills must respond to that motion if she objects to public disclosure; and

(3) Defendants may share information protected from disclosure with any agents of Defendants to the extent reasonably necessary for litigation, so long as any such agents agree to follow the restrictions imposed by this Order.

If the parties either jointly or separately would prefer a different form of protective order, they may file a stipulation consistent with section F.6 of the Standing Order for Magistrate Judge Lisa J. Cisneros or a discovery letter consistent with section F.5 of that Standing Order (attaching as exhibit(s) their proposed protective order(s) and declaration(s) consistent with section F.6).

Unlike communications with a doctor related to a patient's *physical* health, federal law recognizes a privilege for communications between a patient and psychotherapist. *See Jaffee*, 518 U.S. at 9–10. Courts have reached differing conclusions as to whether a plaintiff waives that privilege by placing the plaintiff's mental health at issue, such as by seeking emotional distress damages or asserting a claim for disability discrimination. *See, e.g.*, *Nehad v. Browder*, No. 15-CV-1386 WQH NLS, 2016 WL 1428069, at *3–4 (S.D. Cal. Apr. 11, 2016); *Fritsch v. City of Chula Vista*, 187 F.R.D. 614, 621–33 (S.D. Cal. 1999); *Doe v. City of Chula Vista*, 196 F.R.D. 562, 564–69 (S.D. Cal. 1999) (modifying the magistrate judge's order in *Fritsch*). The Court finds no reason to delve into the scope or viability of such a theory of waiver here, given that Wills apparently asserts only a physical disability (a stroke and vision impairment), *see* ECF No. 132 at 2, and given her interrogatory response stating that she has not received mental health treatment related to her alleged emotional distress, ECF No. 132-1 at 2. Montage Health has neither argued nor shown that any mental health treatment is relevant to this case.

As one final issue of privacy, the Court understands that the Clerk previously locked Montage Health's Discovery Letter at Wills's request based on its reference to a claim that Wills purportedly made (but denies having made) upon her admission to CHOMP. Because this discovery dispute is no more than tangentially related to the merits of the case, the standard for maintaining filings under seal is a showing of "good cause." *See Ctr. for Auto Safety v. Chrysler Grp., LLC*, 809 F.3d 1092, 1097, 1101 (9th Cir. 2016). The Court finds good cause to seal Montage Health's Discovery Letter based on the inflammatory nature of the purported claim, and

1  thus ORDERS that the Discovery Letter shall remain under seal.  To complete the public record,

2  Montage Health is ORDERED to file a public version of its Discovery Letter and the attached

3  excerpts of discovery, redacting all references to the particularly claim that Montage Health

4  suggests Wills made—i.e., narrowly tailored redactions to Request for Admission Nos. 1 through

5  3, which are included in the context of Interrogatory No. 7.  This Order should not be construed as

6  resolving whether "compelling reasons" would support sealing the same information in a different

7  context more closely related to the merits of the case.  *See id.* at 1096.

### D.     Interrogatories

Montage Health seeks further responses from Wills as to Interrogatory Nos. 2, 3, 6, and 7.  ECF No. 132 at 2.  Although the excerpts attached to Montage Health's Discovery Letter also include Interrogatory No. 5 and Wills's response thereto, ECF No. 132-1 at 2, the Discovery Letter does not seek any relief as to that interrogatory.

#### 1.     Interrogatory No. 2

Interrogatory No. 2 reads as follows: "Describe in detail the services that were provided to you by your dog you claim was a service animal as of March 25, 2019."  ECF No. 132-1 at 1.  Wills responded as follows: "The work and/or tasks to be performed included but were not limited to: 1). Medical alert 2). Signaling 3). Protection 4). Ensuring safety 5). Calming 6). Performing other special work and/or tasks."  *Id.*  She otherwise objected based what she claims are inaccurate implications of the question, and that the interrogatory is compound and seeks confidential information.  *Id.*

Montage Health moves to compel Wills to "specify what 'other special work or tasks' her dog was trained to perform".  ECF No. 132 at 2.  The interrogatory is straightforward and goes to issues at the heart of this case: whether Wills's dog was in fact a service dog, and whether the ADA required Montage Health to allow Wills's dog in her hospital room while she received treatment.  Montage Health is correct that Wills's vague reference to "other special work and/or tasks" fails to answer the question posed.  Montage Health is entitled to a complete answer, and Wills's objections are overruled.  Wills is ORDERED to supplement her answer to Interrogatory No. 2 to list all special work or tasks related to her disability that her dog was trained to perform as

of March 25, 2019.

### 2. Interrogatory No. 3

Interrogatory No. 3 asks Wills to "[i]dentify by name, address, and specialty, each physician or other healthcare provider you saw for care or treatment for the disability from which you claim to have suffered which is the basis for your ADA claim." ECF No. 132-1 at 1. In response, Wills objects that the information requested is equally available Montage Health and the hospital that it operates, CHOMP. *Id.* She otherwise objects based on burden, relevance, lack of personal knowledge, physician-patient privilege, and medical privacy (among other clearly inapplicable objections, like her assertion that the interrogatory calls for a legal conclusion). *Id.* at 1–2. Embedded within her objections, Wills states that she "shall make a reasonable and good faith effort to obtain the information by inquiry to other natural persons or organizations except where the information is equally available to the propounding party." *Id.*

Whether Wills has a protected disability[4] goes to the heart of her claims against Montage Health. The extent to which she has sought treatment for disability could inform that question. Wills's relevance objection is therefore overruled. Her privilege objection fails because there is no physician-patient privilege under federal law, *Bashinski*, 2024 WL 239102, at *4, and because the interrogatory does not seek doctor-patient communications. Wills's medical privacy concerns are outweighed by Montage Health's need for discovery regarding one of the elements of Wills's claim—whether she has a disability—and mitigated by the confidentiality rules imposed by this Order. While Wills may lack personal knowledge of some of the details that Montage Health requests, she presumably knows—at least to some degree—the providers from whom she has sought treatment, and she has agreed as part of her interrogatory response to inquire as to other details.

Wills is therefore ORDERED to supplement her response to Interrogatory No. 3 to answer that interrogatory to the best of her personal knowledge, as informed by reasonable inquiry, except

---

[4] The ADA defines a "disability" as "a physical or mental impairment that substantially limits one or more major life activities," or a record or perception of such an impairment. 42 U.S.C. § 12102(1).

1    that Wills need not list physicians or healthcare providers that she has seen at CHOMP or

2    otherwise through Montage Health (because Montage Health presumably has access to that

3    information). If Wills has not seen any other physicians or medical providers outside of CHOMP

4    or Montage Health, she must state that fact in her supplemental response.

### 3. Interrogatory No. 6

Interrogatory No. 6 reads as follows: "If you have received any medical or mental health treatment for the emotional distress you allege to have incurred, identify by name, address, and specialty each health care provider you have seen for said treatment." ECF No. 132-1 at 2. Wills objects based on relevance, burden, lack of personal knowledge, physician-patient privilege, and medical privacy. *Id.* at 2–3. Wills asserted in response to another interrogatory (Interrogatory No. 5) that she sought medical treatment but not mental health treatment for "emotional distress as a result of the conduct which is the basis for [her] ADA claim." *Id.* at 2.

Since Wills has asserted emotional distress as a result of Montage Health's alleged violation of the ADA and related laws, the extent of such distress is relevant to her claim for damages and to Montage Health's defense against that claim. It is not unduly burdensome to ask Wills to identify the providers of the treatment that she claims to have received. Merely identifying those providers does not unduly intrude on Wills's medical privacy, particularly in light of the confidentiality rules imposed by this Order. Her privilege objection fails because there is no physician-patient privilege under federal law, *Bashinski*, 2024 WL 239102, at *4, and because the interrogatory does not seek doctor-patient communications.[5] Wills is therefore ORDERED to provide a supplemental response to Interrogatory No. 6 identifying to the best of her knowledge all providers of medical treatment for the emotional distress she alleges that she incurred as a result of Montage Health's conduct.

### 4. Interrogatory No. 7

Interrogatory No. 7 seeks the facts on which Wills bases her denials of Montage Health's

---

[5] Because Wills states that she did not seek mental health treatment for her emotional distress, and also because the interrogatory seeks only to identify providers and not to disclose communications, this interrogatory does not implicate the psychotherapist-patient privilege.

1  requests for admission. ECF No. 132-1 at 3. Wills objected to Interrogatory No. 7 as improperly
2  compound and containing subparts. ECF No. 132-1 at 3–4. Under this Court's local rules, a
3  "demand that a party set forth the basis for a denial of an admission requested under Fed. R. Civ.
4  P. 36 will be treated as a separate discovery request (an interrogatory) and is allowable only to the
5  extent that a party is entitled to propound additional interrogatories." Civ. L.R. 33-2. The record
6  before the Court reveals only six other interrogatories and only five requests for admission. *See*
7  ECF No. 132-1 at 1–4; ECF No. 132 at 2 ("[D]efendant Montage Health propounded seven (7)
8  specially prepared interrogatories on plaintiff."). Counting each request for admission as a
9  separate interrogatory under Local Rule 33-2, the record suggests that Montage Health effectively
10  propounded eleven interrogatories, which does not exceed the twenty-five interrogatories allowed
11  under Rule 33(a)(1) of the Federal Rules of Civil Procedure. This compound interrogatory is
12  therefore "allowable" under Local Rule 33-2. This Order refers to that interrogatory as applied to
13  each of the five requests for admission at issue as Interrogatory Nos. 7-1, 7-2, 7-3, 7-4, and 7-5.

14        Request for Admission No. 1 asks Wills to admit that she made a particular claim when
15  she first presented to CHOMP. ECF No. 132-1 at 3. Wills denied that she did so. *Id.* The first of
16  several objections that Wills asserted reads, "Objection: Not factual"—making clear Wills's
17  position that she did not make the claim at issue. *Id.* Without reaching the merits of Wills's
18  various other objections to the accompanying interrogatory, it is not clear what additional facts
19  Wills could offer to support or explain her position that she did not make a particular statement.
20  As a general rule, there are few details one could share about a statement that did not occur. Any
21  exploration of what precisely Wills said when she arrived the hospital is better addressed through
22  deposition testimony. Montage Health's request to compel a further answer is DENIED as to
23  Interrogatory No. 7-1.

24        This holding is based on the Court's understanding that Wills denies having made the
25  statement at issue. If the Court has misunderstood Wills's responses and she intended anything
26  other than an outright denial, then Wills must supplement her response to Interrogatory No. 7-1 to
27  provide details.

28        Request for Admission No. 2 asks Wills to admit that the claim she purportedly made in

United States District Court
Northern District of California

1    the context of the previous request for admission was not truthful. ECF No. 132-1 at 3. Wills

2    denied that request. *Id.* Again without reaching Wills's various objections, it is not clear what

3    additional facts Wills could offer to address the purported untruthfulness of a purported statement

4    she claims not to have made. Montage Health's request to compel a further answer is DENIED as

5    to Interrogatory No. 7-2.

6          Request for Admission No. 3 asks Wills to admit that she previously admitted to a doctor

7    that she had lied about a particular issue, apparently in reference to the purported statement in

8    Request for Admission No. 1 that Wills denies having made. ECF No. 132-1 at 3. Wills denied

9    this request as well. *Id.* Once again, it is not clear that Wills could share any details about a

10    purported admission she denies having made. Accordingly, Montage Health's request to compel a

11    further answer is DENIED as to Interrogatory No. 7-3.

12          Request for Admission No. 4 asks Wills to admit that her "dog did not have any special

13    training as a service animal as of March 25, 2019." ECF No. 132-1 at 3. Wills denied that request

14    for admission. She provided no substantive response to the interrogatory seeking the details of

15    that denial, instead listing several objections. *Id.*

16          In this instance, Montage Health's interrogatory appropriately seeks the facts upon which

17    Wills based her denial: the training that her dog purportedly had received. None of Wills's

18    objections to this interrogatory have merit. *See id.* at 4. The objection that the request is "not

19    factual" does not relieve her of the obligation to share the facts on which she based her denial.

20    The objections based on the "work product doctrine" or improperly seeking a legal conclusion are

21    inapplicable, as facts regarding her dog's training to provide services for disability are neither a

22    question of law nor work product in anticipation of litigation. The objection based on "privileged"

23    physician-patient communications fails because no such privilege exists under federal law,

24    *Bashinski*, 2024 WL 239102, at *4, and also because the interrogatory does not seek any such

25    communications. Objections based on relevance and the scope of permissible discovery fail

26    because whether Wills's dog was trained as a service animal may be relevant to whether Wills had

27    any right under the ADA to have her dog present during medical treatment. *See, e.g.*, 28 C.F.R.

28    § 35.104 ("*Service animal* means any dog that is *individually trained to do work or perform tasks*

11

for the benefit of an individual with a disability . . . ." (second emphasis added)). The interrogatory also is not impermissibly compound or injunctive. Wills is ORDERED to supplement her response to Interrogatory No. 7-4 by explaining any special training that her dog had received as a service animal as of March 25, 2019.

Request for Admission No. 5 asks Wills to admit that her dog did not provide any services related to a disability Wills had as of March 25, 2019. ECF No. 132-1 at 4. Wills denied that request for admission. She provided no substantive response to the interrogatory seeking the details of that denial, instead listing several objections. *Id.* This denial is amenable to explanation: Wills could and should have explained what services her dog provided in relation to any disability she had as of March 25, 2019. For the same reasons discussed above with respect to Interrogatory No. 7-4, Wills's objections are overruled, and Wills is ORDERED to supplement her response to Interrogatory No. 7-5 by explained what services her dog provided in relation to any disability she had as of March 25, 2019.

### E. Requests for Production of Documents

Montage Health requested the following categories of documents, for which it now seeks to compel production: (1) all documents in Wills's possession that describe the disability for which she claims her service dog was necessary at the time of the events at issue; (2) all documents reflecting her dog's training; and (3) "[a]ll correspondence or other communications with [Wills's] physicians or other health care providers that identify or discuss any health condition from which [Wills] suffer[s] that [Wills] claim[s] is covered under the ADA." ECF No. 132-1 at 4–5. Wills objects on similar grounds as discussed above with respect to Montage Health's interrogatories, and based on the cost of production.

Wills's objections are overruled in large part for the same reasons discussed above. These requests go to basic issues of Wills's ADA claim: whether she had a protected disability and whether her dog was a service dog whose presence was necessary to accommodate that disability. There is no physician-patient privilege under federal law. The intrusion on Wills's medical privacy is justified by the relevance of the documents requested, and mitigated by the restrictions on disclosure imposed by this Order.

To avoid undue burden, the Court limits all requests to documents in Wills's possession, and limits Request No. 3 to correspondence or communications regarding any medical condition that Wills intends to assert as relevant to her claims.[6] The Court further excludes correspondence with any employee of Montage Health, because Montage Health presumably has equal access to such documents.

Wills is ORDERED to produce documents in response to the three requests at issue, subject to the modifications above. Montage Health asserts, and Wills does not dispute, that Montage Health has offered to arrange for duplication of documents at its own expense. ECF No. 132. Unless Wills would prefer to duplicate documents herself, the parties are ORDERED to cooperate in arranging for duplication or scanning at Montage Health's expense.

If Wills does not have any documents responsive to one or more of the three requests at issue, she must serve a response asserting that she has no responsive documents. If Wills withholds any documents from production based on the work product doctrine, the psychotherapist-patient privilege, or any other privilege, she must produce a list identifying all such documents as required by Rule 26(b)(5)(A)(ii) of the Federal Rules of Civil Procedure.

### F. Sanctions

Montage Health briefly requests a "monetary or other appropriate sanction," or at least requests the opportunity to file a motion seeking such sanctions. ECF No. 132 at 3. District courts in the Ninth Circuit do not typically award monetary sanctions against indigent litigants, on the grounds that such sanctions would either be ineffective or unduly punitive. *See, e.g.*, *Hammler v. Lyons*, No. 1:19-cv-01650-AWI-GSA-PC, 2023 WL 395898, at *10 (E.D. Cal. Jan. 25, 2023) ("[C]ourts frequently refuse to impose monetary sanctions on indigent parties."), *recommendation adopted*, 2023 WL 2839470 (E.D. Cal. Apr. 7, 2023); *Davis v. Morris*, No. LA CV 13-08807-VBF, 2014 WL 1364895, at *3 (C.D. Cal. Apr. 4, 2014) (collecting decisions). Wills was granted leave to proceed in forma pauperis on the basis of indigence, ECF Nos. 5, 9, and Montage Health

---

[6] As written, the request could perhaps encompass other conditions that Wills believes meet the ADA's definition of a disability but are not relevant to her need for a service dog or otherwise relevant to her claims.

13

1  has shown no basis to depart from that usual approach here.  Montage Health has not identified

2  any particular sanction that it seeks other than monetary sanctions.  The request for sanctions is

3  therefore DENIED.  For generally the same reasons, and because briefing and argument on a

4  motion for sanctions would only impair the parties' ability to complete fact discovery in the

5  limited time remaining to them, Montage Health's request to file a motion for sanctions is also

6  DENIED.

7        That said, Wills is admonished that continued failure to comply with her discovery

8  obligations, continued assertion of frivolous objections, or continued failure to follow applicable

9  standing orders regarding the procedures for discovery disputes (including meeting and conferring

10 and drafting joint letters) may result in imposition of sanctions, potentially including dismissal of

11 her claims.

12       Wills states that she "will request" sanctions for Defendants' purported failure to comply

13 with Judge Chen's order regarding service by mail.  ECF No. 137.  The Court does not construe

14 her response as itself seeking such sanctions.  Given that Wills asserts a purported violation of

15 Judge Chen's previous order as to documents that are unrelated to the current dispute and that

16 were sent before the case was referred to the undersigned magistrate judge, any motion for

17 sanctions for those purported violations should be directed to Judge Chen in the first instance,

18 subject to referral by Judge Chen if he determines that such a motion implicates discovery issues

19 best addressed by the undersigned.

20 **IV.  CONCLUSION**

21       The requests presented in Montage Health's Discovery Letter are GRANTED in part and

22 DENIED in part, as discussed above.  Wills is ORDERED to serve the following supplemental

23 interrogatory responses no later than March 22, 2024:

24     (1) A supplemental response to Interrogatory No. 2 listing all special work or tasks related

25         to her disability that her dog was trained to perform as of March 25, 2019;

26     (2) A supplemental response to Interrogatory No. 3 to answer that interrogatory to the best

27         of her personal knowledge, as informed by reasonable inquiry, except that Wills need

28         not list physicians or healthcare providers that she has seen at CHOMP or otherwise

14

through Montage Health;

(3) A supplemental response to Interrogatory No. 6 identifying to the best of her knowledge all providers of medical treatment for the emotional distress she alleges that she incurred as a result of Montage Health's conduct;

(4) A supplemental response to Interrogatory No. 7-4 explaining any special training that Wills's dog had received as a service animal as of March 25, 2019;

(5) A supplemental response to Interrogatory No. 7-5 explaining what services Wills's dog provided in relation to any disability she had as of March 25, 2019.

Wills is ORDERED to produce the following documents, either by mailing copies to Montage Health or by arranging for duplication or scanning at Montage Health's expense, no later than March 22, 2024:

(1) All documents in Wills's possession that are responsive to Request for Production Nos. 1 and 2;

(2) In response to Request for Production No 3, all documents in her possession that comprise correspondence or other communications with Wills's physicians or other health care providers (except for employees of Montage Health) that identify or discuss any health condition that Wills intends to assert as relevant to her claims.

If Wills wishes to arrange for duplication or scanning at Montage Health's expense, she must inform Montage Health's attorneys of such intent by telephone no later than March 18, 2024.

Defendants are ORDERED to limit disclosure of Wills's medical information obtained through discovery under the terms stated above. To complete the public record, Montage Health is ORDERED to file public version of its Discovery Letter, redacting references to a purported statement by Wills, no later than March 15, 2024.

The Clerk shall mail a copy of this Order and this Court's Standing Order to Wills via first class mail. Judge Chen previously ordered Defendants to "call Ms. Wills to let her know when mail is being delivered to her." ECF No. 133 at 2. In keeping with that order, the Clerk is directed to call Wills to advise her that this Order and the Court's Standing Order are being mailed to her.

**IT IS SO ORDERED.**

Dated: March 8, 2024

_____
LISA J. CISNEROS
United States Magistrate Judge