UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CYNTHIA S WILLS,<br><br>    Plaintiff,<br><br>    v.<br><br>MONTAGE HEALTH,<br><br>    Defendant. | Case No. 21-cv-01998-EMC<br><br>**FINAL PRETRIAL CONFERENCE ORDER**<br><br>Docket Nos. 272–73, 275–80 284, 286, 297, 301 |

## I.   TRIAL DATE & LENGTH OF TRIAL

Jury selection is set for October 15, 2025, at 8:30 a.m. Trial is set to be held on October 15–October 17, and October 20. Trial days shall begin at 8:30 a.m. and end at 4:30 p.m., except on October 16, when trial will run from 8:30 a.m. to 12:00 p.m. Counsel shall be present in the Courtroom at 8:00 a.m. to discuss any matters requiring resolution prior to commencement of trial at 8:30 a.m.

A Juror Questionnaire screening conference is set for October 14, 2025 at 9:00 a.m. via a Zoom webinar. A further pretrial conference may be convened at that time to go over any unresolved pretrial matters.

Each side shall have five (5) hours to present its case. This includes opening statements, direct and cross-examinations, and closing arguments.

## II.   TRIAL PROCEDURES

To make trial more efficient, the Court imposes additional trial procedures. A party must give the opposing party *and* the Courtroom Deputy at least forty-eight (48) hours' notice of witnesses it intends to call, exhibits it intends to use, and/or demonstratives it intends to use. Saturdays and Sundays do not count. Thus, *e.g.*, for a Monday trial day that starts at 8:30 a.m., a party must give the opposing party and Courtroom Deputy notice by 8:30 a.m. the preceding

Thursday.

If the opposing party has an objection, then it must notify the party by 6:00 p.m. the same day of notice, and the parties shall meet and confer to see if they can resolve their differences. If they cannot, then they shall **file** with the Court a joint statement twenty-four (24) hours (excluding Saturdays and Sundays) in advance of the relevant trial day. In short, the Court requires a full day to resolve any objections.

### III. WITNESSES

Plaintiff Ms. Wills stated at the Pre-Trial Conference that she intends to only call herself to testify in her case-in-chief.

Defendant Montage Health ("Montage") identified the following individuals it intends to call in its case-in-chief. *See* Dkt. 285, App. A2

1) Dr. Erin M. Sullivan
2) Dr. Leslie McDaniel
3) Sgt. Kris Richardson

### IV. MOTIONS IN LIMINE

A. Plaintiff's Motions in Limine (Dkt. 275, 277, 279)

  1. MIL No. 1 to Exclude Evidence of Suicidal Ideation

Plaintiff Claudia Wills seeks to exclude all references to her alleged suicidal ideation when she was treated by Montage's emergency department on March 25, 2019. Dkt. 275. She contends that such evidence is (1) irrelevant to her Unruh Act and negligence claims, and (2) unfairly prejudicial under Federal Rule of Evidence ("F.R.E.") 403.

The nature of Ms. Wills's arrival to the emergency room and the staff's reasons for placing (and later lifting) a 5150 hold are directly relevant to live disputes the jury must resolve, including whether the staff made an individualized assessment, whether the 5150 was a pretextual basis to separate Ms. Wills from her dog, and whether the decision to separate Ms. Wills from her dog was reasonable in the context of the case where staff was prepared to admit her to the psychiatric unit (*e.g.*, the psychiatric unit poses unique safety risks which the jury must understand to evaluate reasonableness). Moreover, suicidal ideation is referred to in medical records that both sides seek

to introduce, and exclusion of all such explanations would contribute to juror confusion by depriving jurors of an explanation for why staff decided to have Ms. Wills held in a psychiatric unit.

With respect to F.R.E. 403 and concerns about unfair prejudice, the Court recognizes that "suicidal ideation" is a stigmatizing concept that could color the jury's view of Ms. Wills's credibility, mental acuity, or worthiness of accommodation. The parties are to exercise caution in avoiding pejorative characterizations and ensuring that the case does not devolve into a trial over whether Ms. Wills was actually suicidal. The jury, however, cannot meaningfully assess either side's narrative without some evidence of what Ms. Wills said to Montage staff and how those staff members responded. Ms. Wills's statements and potential recantation or denial of those statements may also be relevant to the jury's determination of Ms. Wills's credibility. Evidence of Ms. Wills's purported suicidal ideation holds significant probative value, and it is not substantially outweighed by the risk of prejudice.

Accordingly, the Court **DENIES** Ms. Wills's MIL No. 1.

2.  MIL No. 2 to Exclude Evidence that Plaintiff Presently Lacks a Service Dog

Ms. Wills's second MIL urges the Court to preclude Montage from introducing evidence that her dog passed away in 2020 and that she has not obtained a new service dog since then. Dkt. 277.

The Court agrees with Ms. Wills that liability and damages turn on the March 2019 encounter, not her present disability status. But the fact that Ms. Wills has not had a service dog since 2020 is a probative fact bearing on whether Ms. Wills was disabled in 2019 and whether her dog was needed and functioned as a trained service animal. This fact could also be used by the jury to assess the weight of Ms. Wills's assertions that she could not be separated from her dog to receive care.

Unlike the evidence of suicidal ideation addressed in MIL No. 1, the fact that Ms. Wills has not obtained a new service animal is not inherently stigmatizing or inflammatory. Montage may not argue that Ms. Wills's current non-ownership of a dog automatically defeats liability for past discrimination or negligence.

3

The Court upon request may issue an appropriate limiting instruction to remind the jury that it is to focus on March 2019 conduct and Ms. Wills's disability status at that time.

For the foregoing reasons, Ms. Wills's MIL No. 2 is **DENIED**.

3.  MIL No. 3 to Exclude Evidence of Transient Ischemic Attacks

Ms. Wills's third and final MIL seeks to exclude Montage from presenting any expert argument, evidence, or testimony concerning her alleged transient ischemic attacks (TIAs). Dkt. 279. Ms. Wills reserves her right, however, to testify as a lay witness about her own symptoms.

Neither party served expert disclosures under Federal Rule of Civil Procedure 26(a)(2), thus expert testimony may not be presented. *See, e.g.*, *Goodman v. Staples*, 644 F.3d 817, 827 (9th Cir. 2011); *Merchant v. Corizon Health, Inc.*, 993 F.3d 733, 740–42 (9th Cir. 2021).

At the PTC, Ms. Wills's counsel expressed concern that Montage's witnesses would potentially offer undisclosed expert opinions under the guise of lay witness testimony, particularly on questions related to whether a service dog could detect or anticipate TIAs. Montage largely agreed that no expert testimony under F.R.E. 702 should be admitted but argued that its witnesses may describe what they perceived and explain their clinical decisions, including limited background on TIAs drawn from their experiences as applied to Ms. Wills.

Pursuant to F.R.E. 701, Ms. Wills may testify to her perceptions and experiences, including episodes of vision loss, confusion, speech or balance difficulties, and how her dog responded when such symptoms occurred. She may not offer medical conclusions (*e.g.*, that she "had TIAs" in a clinical sense, that a TIA is a "mini-stroke," or that TIAs medically caused her symptoms). She may, however, testify that she has seen medical health professionals who told her that her symptoms were consistent with TIAs. If she references TIAs in her direct examination, Montage, in turn, may cross-examine Ms. Wills on the absence of a formal TIA diagnosis, lack of corroborating medical testimony, or any inconsistencies in her testimony.

Relatedly, Montage staff members may describe what they observed and what Ms. Wills reported while in their care, and explain the basis for their clinical decisions. These witnesses may explain whether their diagnosis included or did not include possible TIA and reasons therefor consistent so long as the testimony pertains to their diagnosis of Ms. Wills consistent with F.R.E.

4

701.  Montage witnesses may not, however, use their testimony to give general opinions on TIAs or the capabilities of service dogs to detect TIAs, which would fall under F.R.E. 702.

Thus, Ms. Wills's MIL No. 3 is **GRANTED IN PART and DENIED IN PART**. Witnesses are barred from providing undisclosed expert opinions about TIAs generally and the ability of service dogs to detect TIAs, testimony falling under F.R.E. 702.  Ms. Wills may testify as to her symptoms and experiences and any past consideration of TIA by prior doctors, and Montage clinicians may provide percipient testimony explaining what they observed, what Ms. Wills told them, and what, if any, diagnosis they rendered including reasons therefor consistent with F.R.E. 701.

B.  Montage's Motions in Limine (Dkt. 272–73)

1.  MIL No. 1 to Exclude Evidence of Transient Ischemic Attacks

Montage's MIL No. 1 seeks to exclude any evidence that Ms. Wills suffers from TIAs, arguing that she lacks a formal diagnosis, has not disclosed a medical expert, and is not qualified to give medical opinions.  Dkt. 272.

This motion is the flip side of Ms. Wills's MIL No. 3.

Montage's MIL No. 1 is **DENIED**.

2.  MIL No. 2 to Exclude Evidence of Whether Dog Was a Service Animal

Montage's MIL No. 2 urges the court to exclude any evidence that Ms. Wills's dog was a service animal.  Dkt. 273.

Montage argues that, because Ms. Wills has not disclosed a medical expert to opine whether she was in fact disabled, she cannot establish that her dog was a service animal.

This Court has already held that Ms. Wills's lack of a formal diagnosis or medical expert does not foreclose her Unruh Act claim, and that neither the ADA nor Unruh Act require a medical diagnosis to prove disability.  Dkt. 267.  In fact, demanding documentation or proof of an animal's status as a service animal itself violates the ADA, and service animals may be self-trained without the need for any formal certification.  *See* 28 C.F.R. § 35.136(f) ("A public entity may ask if the animal is required because of a disability and what work or task the animal has been trained to perform.  A public entity shall not require documentation, such as proof that the animal

5

has been certified, trained, or licensed as a service animal."); *C.L. v. Del Amo Hosp., Inc.*, 992 F.3d 901, 911 (9th Cir. 2021) ("DOJ regulations and commentary make clear that individuals may self-train service animals without obtaining formal certification.").

On this record, whether Ms. Wills's dog was a service animal that performed disability-related tasks is a jury issue tied to her Unruh Act claim. The Court will therefore allow Ms. Wills to present lay testimony, pursuant to F.R.E. 701, describing her symptoms, the tasks she trained the dog to perform, and the tasks that she personally observed the dog complete in response to those symptoms

Accordingly, Montage's MIL No. 2 is **DENIED**. Evidence and argument may proceed under the limits specified above.

## V.   WRITTEN DISCOVERY

Ms. Wills has proposed using the following interrogatory responses, which Montage objects to: Interrogatory Nos. 2, 3, 4, and 22. Dkt. 285. Montage does not object to Ms. Wills's proposed use of Montage's responses to Interrogatory Nos. 9–10, or Montage's responses to Requests for Admission Nos. 5, 6, 9, and 13. *Id.*

Montage intends to use Ms. Wills's supplemental response to Interrogatory No. 6; Ms. Wills does not object.

The Court has considered the parties' proposals and objections. The disputed interrogatory responses are relevant. Montage has already answered in sufficient detail, undermining its objections based on overbreadth or undue burden. The responses do not disclose attorney-client communications or attorney work product. Accordingly, the parties may use the disputed written discovery responses as reproduced below, with redactions corresponding to the stricken text.

Interrogatory No. 2

IDENTIFY each "PERSON" employed by "YOU" whom agreed explicitly or implicitly and took any concrete steps in furtherance of that agreement to subject, or cause to be subjected, "THE PLAINTIFF" citizens within the jurisdiction of the United States to be deprived of any rights, privileges, or immunity ~~as Plaintiff contends is secured by he CONSTITUTIONAL RIGHTS PURSUANT TO 42 U.S.C. § 1983 as IDENTIFIED in response to Interrogatory No. 1.~~

Response: ~~Objection. This interrogatory lacks a foundation and assumes facts not in evidence. Without waiving these objections,~~ when the Plaintiff indicated she was suicidal she was

6

placed on a Health and Safety Code sec. 5150 hold by Dr. McDaniel.

Interrogatory No. 3

IDENTIFY "TRAINING" (specifying content, timing and duration "YOU" provided for the "YEARS 2015 THROUGH 2022," which evidences, supports, or relate to "YOUR" contention that MONTAGE HEALTH and/or CHOMP or any of their respective employees, etc. provided services to individuals with disabilities in a nondiscriminatory manner in compliance with the AMERICANS WITH DISABILITIES ACT of 1990.

Response: ~~Objection. This request is overbroad and unduly burdensome. Without waiving these objections,~~ all new employees undergo training on hospital policies and procedures, which included policies and procedures on the protections provided by the ADA. Further, there are annual employee trainings that include the ADA policies and procedures for all employees.

Interrogatory No. 4

IDENTIFY all DOCUMENTS, records, recordings, statements writings [sic], and/or tangible materials purporting to contain information that evidences, supports, or relates to the "TRAINING" "YOU" provided for the "YEARS 2015 THROUGH 2022," which evidences, supports, or relates to "YOUR" contention that MONTAGE HEALTH and/or CHOMP or any of their respective employees, etc. provided services to individuals with disabilities in a nondiscriminatory manner in compliance with the AMERICANS WITH DISABILITIES ACT of 1990.

Response: ~~Objection. This request is overbroad and unduly burdensome. Without waiving these objections,~~ the hospital has written policies on the ADA, including one specific to service animals. All employees are expected to abide by the policies and procedures.

Interrogatory No. 22

If "YOUR" response to the Requests for Admission served simultaneously herewith is anything other than an unqualified admission, then please STATE as to each "DENIAL" the specific facts forming the basis for such "DENIAL" and IDENTIFY each witness and document upon which you will rely to support your "DENIAL."

Response: ~~Objection. Please see the answers to the requests for admission, which speak for themselves. This interrogatory is further objected to on the grounds it is overbroad and unduly burdensome, and seeks information protected from discovery by the attorney client and attorney work product privileges.~~

Amended Response:
Request 14: This request was denied based on the absence of any documents to support this claim. The medical records for the visit in question do not support this claim. No known witnesses. The documents in support are the medical records for the visit in question.

~~Request 15: There is no claim in this case under 42 USC sec. 1983.~~

Request 16: CHOMP employees are trained annually on the ADA and Service Animal

7

Policies and Procedures.  The following employees of CHOMP (who can be contacted through defense counsel) will confirm they have been trained n these policies and procedures:
- Judy Blevins RN
- Kathleen Stith RN
- Kerrie Johnson RN
- Lara Shipley NP
- Christie Smith RN
- Faith Halbert
- Daniel Garcia
- Ryan Casey
- Vera McCarthy RN
- Marcelis Short
- Tina Worley RN

The supportive documents are the ADA and Service Animal policies and procedures, which have already been produced.

Request 17: The plaintiff appeared in the emergency department claiming to be suicidal. She was placed on a 5150 hold.  There were no services provided by her service animal that could not be provided in the locked unit, where service animals are not allowed absent a specific need which could not be addressed by the staff in the locked unit.  When the plaintiff learned her dog could not accompany her to the locked unit, she admitted to lying about her suicidality.  The following are witnesses to these events:
- Erin Sullivan M.D.
- Leslie McDaniel M.D.
- Judy Blevins RN
- Kathleen Smith RN
- Kerrie Johnson RN
- Lara Shipley NP
- Christie Smith RN
- Faith Halbert
- Daniel Garcia
- Ryan Casey
- Vera McCarthy RN
- Marcelis Short
- Tina Worley RN
- Sabrina Perez (MPD)
- Brandon Leniart (MPD)
- Kris Richardson (MPD)

The supporting documents are the medical records for the visit in question.

Request 18: The hospital policies and procedures on the ADA and Service Animals reflect the awareness of the hospital of the rights of disabled individuals with service animals.

Request 19: When the plaintiff initially claimed to be suicidal the plan was to admit her to the locked unit.  When she learned her dog could not accompany her, she admitted to lying about her suicidality.  She was then discharged with her dog.  Witnesses to this series of events were:
- Erin Sullivan M.D.
- Leslie McDaniel M.D.
- Judy Blevins RN

8

- Kathleen Smith RN
- Kerrie Johnson RN
- Lara Shipley NP
- Christie Smith RN
- Faith Halbert
- Daniel Garcia
- Ryan Casey
- Vera McCarthy RN
- Marcelis Short
- Tina Worley RN
- Sabrina Perez (MPD)
- Brandon Leniart (MPD)
- Kris Richardson (MPD)

The supporting documents are the medical records for the visit in question.

## VI. EXHIBITS

The court is in receipt of Ms. Wills's and Montage's exhibits and exhibit lists. Dkt. 285, App. B1 & B2. The parties have not provided bellwethers.

The exhibits are grouped by thematic categories below, with rulings and guidance on how the Court will proceed.

A. Plaintiff's Exhibits

1. Exhibits 1–3, 8, 10 (Disability-Related Policies)

Plaintiff's Exhibit 1 is a set of medical records produced during Ms. Wills's visits to Montage at various times. It includes medical records and attestations from Montage personnel present in the emergency department the night of the incident. Montage has not objected to this exhibit.

Plaintiff's Exhibit 2 is Montage/CHOMP's 2015 policy on service animals. It may be used to discuss Montage's policies and procedures regarding service animals. Montage has not objected to this exhibit.

Plaintiff's Exhibit 3 is Montage/CHOMP's 2020 policy on service animals. It may be used to discuss Montage's policies and procedures regarding service animals. Montage has not objected to this exhibit.

Plaintiff's Exhibit 8 is Montage/CHOMP's 2022 policy on reasonable modifications for individuals with disabilities. Exhibit 8 states that the policy's purpose is "[t]o evaluate and consider requests for reasonable modifications for individuals with disabilities to ensure access

9

and participation in Community Hospital programs, activities and services." Exhibit 8 refers to acceptable auxiliary aids, including service animals, and refers to Montage/CHOMP's policy on service animals. Exhibit 8 also defines a "disability" in line with ADA standards. Although the 2022 policy post-dates the events at the heart of this case, these policies may shed some light on Montage's policies, practices, and training. Exhibit 8 is relevant and Montage's objection is **OVERRULED**.

Plaintiff's Exhibit 10 is Montage's 2022 policy on service animals. It may be used to discuss Montage's policies and procedures regarding service animals. Montage has not objected to this exhibit.

2. Exhibits 4–5, 7, 9, 11, 20–106 (Medical Records)

This large set of Plaintiff's proposed exhibits consists of Ms. Wills's medical records from Montage/CHOMP and third party healthcare providers (Stanford, Maine Medical, Doctors on Duty, etc.). Ms. Wills contends that these medical records corroborate her history of symptoms consistent with TIAs, reflect her consistent practice of reporting symptoms to physicians, and, in relation to damages, show deterrence from seeking care at Montage.

Montage broadly objects to these exhibits on the grounds of hearsay, foundation, and relevance. Many records also concern conditions other than TIAs.

Montage's objections are, at this stage, **OVERRULED**. The medical records, however, are admissible only for limited purposes of showing Ms. Wills's understanding and state of mind. They may not be admitted for the truth of the matters asserted because no foundation has been laid to qualify them as business records under F.R.E. 803(6). Thus, medical records are not admissible to prove that Ms. Wills, in fact, suffered TIAs or other medical conditions. She may not use these records to prove she was disabled at the time of the incident. Upon request, the Court may give a limiting instruction to the jury.

To the extent medical records are used to show Ms. Wills sought medical care from facilities other than that of Defendants after the incident in question, because she was deterred by their conduct, she may do so. However, upon request, the Court may give a limiting instruction.

To avoid undue consumption of time and the risk of prejudice, the parties are directed to

meet and confer regarding efficient presentation of this evidence, particularly of the post-incident visits. Options include, but are not limited to: (1) stipulating to the number of post-incident visits to non-Montage providers, (2), a Federal Rule of Evidence 1006 summary chart, and/or (3) a representative sampling of records rather than submission of all documents.

        3.        <u>Exhibits 6, 12–19, 36 (Accommodations Obtained Elsewhere)</u>

This category of exhibits concerns instances in which Ms. Wills represented her dog as a service animal and third parties accommodated her without incident.

Montage objects to these exhibits on the grounds of relevance, hearsay, foundation, and in the case of Exhibits 16–19, inadmissible character evidence.

Some of these documents are hotel or lodging records, specifically billing invoices (Exhibit 6) and reservation confirmations (Exhibits 12–13). Unless Ms. Wills lays a foundation to qualify these as business records under F.R.E. 803(6), they are not admissible. Ms. Wills can testify that she has in the past consistently represented to businesses that her dog is a service dog and was accommodated. If her credibility on that point is challenged, she may present these documents (as well as Exhibits 16-19) in rebuttal.

Ms. Wills represents that Exhibit 14 is "the policy of a hotel she had previously visited." But Exhibit 14 is only a generic amenities webpage with a bare reference to "ADA hearing impaired accessible rooms" and no substance about disability accommodations. On this record, relevance has not been shown. Accordingly, Montage's objection is **SUSTAINED**.

Exhibit 36 is a card stating "I'm a Service Animal." This is not a business record, but Ms. Wills represents that she "carried this card on her person and that it was among her belongings on March 25, 2019" — the date of the incident. Exhibit 36 is only relevant if Montage saw it, either via Ms. Wills's presentation of the card or while combing through her belongings. Thus, Ms. Wills must demonstrate that the card was viewed by a relevant Montage staff member, or else the card is irrelevant and inadmissible, and Montage's objection will be **SUSTAINED**.

B.    <u>Defendant's Exhibits</u>

Montage seeks to introduce Exhibits 125–130. All exhibits are contemporaneous records of Ms. Wills's interactions with Montage on the night of the incident.

11

Ms. Wills has agreed "to not challenge the authenticity" of the exhibits "or the business record foundation laid for the first layer of hearsay within the records." Dkt. 300.

In general, the records are admissible under Rule 803(6) (business records) and, as to Ms. Wills's own statements for purposes of diagnosis or treatment, under Rule 803(4). Statements by Ms. Wills recorded by Montage clinicians may also qualify as opposing-party statements when offered by Montage. Fed. R. Evid. 801(d)(2).

Where a record contains hearsay-within-hearsay, however, Montage must establish a basis for each layer, but that proof is somewhat flexible under this exception. Generally, the business record exception cover recordation made by "someone with knowledge." F.R.E. 803(6)(A). It can also be a record "from information transmitted by – someone with knowledge." *Id.* While the business record exception typically applies to the person with firsthand knowledge of the recorded observation (and thus there is no double hearsay problem), it is not so strictly limited. If a writer is recording what another staff member said, that recordation may be a business record if *the staff person transmitting* the information to the one recording *had personal knowledge and a business duty to accurately transmit the information*. *See Clark v. City of L.A.*, 650 F.2d 1033, 1037 (9th Cir. 1981) (hearsay within business records is admissible when person furnishing information was "acting routinely, under a duty of accuracy, with employer reliance on the result"). Along similar lines, California courts have exercised flexibility in recognizing a range of employees within a workplace have a "business duty of accuracy." *See, e.g.*, *People v. Valdez*, No. F074436, 2019 WL 2206724, at *16 (Cal. App. May 22, 2019) (nurse practitioner "had a duty to record accurately what patients told her"); *People v. Hubbs*, No. D077636, 2024 WL 4661805, at *12 (Cal. App. Nov. 4, 2024) (state hospital records fall within public records exception because they "were made by public employees having an official duty to accurately record statements during the normal course of business"); *Fresenius v. Baxter*, No. C03-1431, 2006 WL 1330001, at *4 (N.D. Cal. May 15, 2006) ("[I]t is beyond dispute that Mr. Ragsdale had a business duty to accurately describe the Seratron System architecture . . . not only because he was supervising the development of the Seratron System, but also because the system was to be incorporated into a medical device."). In other words, "[i]f both the source and recorder of the information, as well as

12

every other participant in the chain producing the record, are acting in the regular course of business, the multiple hearsay is excused by Rule 803(6)." *Wilson v. Zapata*, 939 F.2d 260, 271 (5th Cir. 1991); *see also Dong Ah Tire v. Glasforms, Inc.*, 2009 WL 10692632, at *2 (N.D. Cal. July 30, 2009); *ADT Sec. Servs. v. Sec. One Int'l, Inc.*, 2013 WL 4766401, at *3 (N.D. Cal. Sept. 5, 2013).

Moreover, if the requisite showing is not made — for example, if a statement was made by a non-Montage employee and by someone without a duty to accurate transmit information to the recorder of the information — those statements embedded in the records may still be admissible (though not for their truth) to explain Montage staff members' subsequent decisions (*e.g.*, initiating or lifting a 5150 hold), particularly where the staff's state of mind is relevant. Where admitted solely to prove state of mind, the Court may give a limiting instruction upon request. And of course, statements made by the patient for purposes of diagnosis and treatment may be admissible independently under F.R.E. 803(4).

Ms. Wills's objections to Montage's Exhibits 125–130 are thus **OVERRULED** except to the extent that they include statements made by non-Montage personnel with no business duty of accuracy owed to Montage. The exhibits and statements within the records by Montage staff are **conditionally admissible** as business records, and Ms. Wills's own statements therein are also admissible under Rules 803(4) and 801(d)(2). The parties shall meet and confer before trial, and take into account the Court's pronouncement of the business records rule, to (1) narrow disputes regarding Exhibits 125–130 by redaction or stipulation; and (2) propose a mutually acceptable limiting instruction for medical records if necessary. Any remaining disputes shall be raised with the Court before the start of trial.

### VII. SEALING THE COURTROOM

Ms. Wills requests that the courtroom be sealed during portions of trial addressing her "medical conditions, disability, and inflammatory allegations." Dkt. 285. Montage opposes this request.

There is a strong presumption favoring the public's right of access to court records which should be overridden only for a compelling reason. *See Hagestad v. Tragesser*, 49 F.3d 1430,

13

1433–34 (9th Cir. 1995); *In re Specht*, 622 F.3d 697, 701 (7th Cir. 2010). Trial exhibits may only be sealed for compelling reasons. *Kamakana v. City & Cnty. of Honolulu*, 447 F.3d 1172, 1178–79 (9th Cir. 2006). "The party requesting the sealing order must articulate compelling reasons supported by specific factual findings that outweigh the general history of access and the public policies favoring disclosure, such as the public interest in understanding the judicial process." *Id.* (internal citations and alterations omitted). "The mere fact that the production of records may lead to a litigant's embarrassment, incrimination, or exposure to further litigation will not, without more, compel the court to seal its records." *Id.* at 1179.

Ms. Wills's request to seal the courtroom whenever the trial turns to a "discussion of her medical conditions, disability, and inflammatory allegations" regarding Ms. Wills's medical condition is overbroad and impracticable. The Court has previously granted Ms. Wills's motions to file documents under seal, but with the disclaimer that "should this case proceed to trial, the Court may need to revisit the issue of what information should be sealed." Dkt. 264 (Text-Only Entry). A key issue at trial will be to determine whether Ms. Wills was actually disabled and whether Montage afforded reasonable accommodations in light of the information it received. Thus, Ms. Wills's medical condition and what was stated about her condition is central to the case. Ms. Wills has not sufficiently demonstrated the compelling nature of her interest to seal the courtroom during discussion of her medical conditions.

For the foregoing reasons, Ms. Wills's request to seal the courtroom is **DENIED**.[1]

## VIII.    VOIR DIRE

To ensure a fair and impartial jury, the Court will allow counsel to conduct cause-related voir dire for 20 minutes each side. The Court approves questions along the following lines (though the parties are not strictly limited to these questions):

---

[1] Ms. Wills has filed multiple motions to seal portions of her motions in limine, trial brief, pretrial conference statement, and discovery letters in the leadup to trial. Dkt. 276, 278, 280, 284, 286, 297, 301. Many of the proposed redactions concern issues that are central to the parties' disputed claims and defenses and, as trial approaches, Ms. Wills has not demonstrated compelling reasons sufficient to overcome the strong presumption in favor of public access to judicial records. *Kamakana v. City & Cnty. of Honolulu*, 447 F.3d 1172, 1178–79 (9th Cir. 2006). The Court thus **DENIES** Plaintiff's motions to seal.

1. Are you, or is any member of your immediate family, affiliated with Montage Health or Community Hospital of the Monterey Peninsula?
2. Are you, or is any member of your immediate family, a medical professional?
    a. If so, what is your role or their role?
3. Do you, or does any member of your immediate family, use a service animal?
4. Do you, or does any member of your immediate family, have an emotional support animal?
5. To your knowledge, have you or any member of your immediate family ever had a dispute with a hospital about the quality of care that was provided?
6. Have you ever been a party to a lawsuit, either the person suing, or the person being sued?
7. Would you, for any reason, whether personal, philosophical, or religious, hesitate to go to a hospital for medical care for yourself or a family member?
8. Have you or anyone in your immediate family ever been treated in a hospital emergency room?

### IX.  JURY INSTRUCTIONS & JURY VERDICT FORM

The Court shall address jury instructions and the verdict form in a separate order.

**IT IS SO ORDERED**.

Dated: October 8, 2025

_____
EDWARD M. CHEN
United States District Judge